UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

---

JOSEPH C. MCCORMICK and
MARY C. MCCORMICK,

Plaintiffs,

v. Case No. 12-CV-763

INDEPENDENCE LIFE AND ANNUITY
COMPANY,

Defendant.

---

**DEFENDANT INDEPENDENCE LIFE AND ANNUITY COMPANY'S REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS THE AMENDED COMPLAINT**

---

## INTRODUCTION

Plaintiffs' Opposition (Dkt. #36)[1] confirms the deficiency of the Amended Complaint. The core theory of the Amended Complaint was that Plaintiffs' loan balance never should have grown because the Policy supposedly provides that yearly loan interest is "paid" via a "deduction from the cash value." (*See, e.g.*, Dkt. #31 ¶¶ 48-49). In its Memorandum in Support of the Motion to Dismiss, Independence showed why that claim is inconsistent with the Policy's terms.

Plaintiffs cannot forestall dismissal of their breach of contract claim by offering an alternative theory that accruing yearly loan interest was instead "paid" to Independence via yearly transfers out of the Policy Sub-Accounts. This theory has an obvious dispositive flaw: the Policy provides that funds transferred out of Sub-Accounts are not "paid" to Independence, but rather are transferred to *Plaintiffs' General Account balance*. The Opposition barely even acknowledges the existence of the General Account. However, once it is accounted for, Plaintiffs' entire theory—including their supporting charts and examples—falls apart.

Plaintiffs also cannot salvage their other claims. The state law claims—the Second, Third, Fifth and Sixth Claims for Relief in the Amended Complaint—fail both because they depend upon the existence of the discredited breach of contract claim and, independently. This is because Plaintiffs have not pleaded (and could not plead) the culpability necessary for a bad faith claim, or the fiduciary relationship necessary for a breach of fiduciary duty claim. As for their Section 12 claim—the Fourth Claim for Relief in the Amended Complaint—Plaintiffs' Opposition simply ignores controlling Supreme Court precedent (cited by Independence in its opening papers) that such a claim can never be tolled, and ignores additional precedent confirming that an absence of pre-suit tender requires dismissal.

[1] Dkt. #__ refers to the numeric entry on the Court's docket for this case.

Thus, this Court should not hesitate to grant Independence's Motion to Dismiss.

**ARGUMENT**

Plaintiffs' Opposition begins by misstating the standard of review. Contract interpretation is not, as Plaintiffs claim, a question of fact. (*See* Dkt. #36 at 5). Rather, it is a question of law for the Court that can and should be resolved against plaintiffs under Rule 12(b)(6) where, as here, they are unable to proffer a contract interpretation to plausibly establish breach. *See INEOS Polymers, Inc. v. BASF Catalysts*, 553 F.3d 491, 498 (7th Cir. 2009) ("If the district court determines that the contract is unambiguous [when considering a motion to dismiss a breach of contract claim], it may determine its meaning as a matter of law. The unambiguous contract controls over contrary allegations in the plaintiff's complaint"); *In re Peregrine Fin. Grp., Inc.*, 487 B.R. 498, 504 (Bankr. N.D. Ill. 2013) (citing *Ogden Martin Sys. of Indianapolis, Inc. v. Whiting Corp.*, 179 F.3d 523, 529 (7th Cir. 1999)) ("When the clear terms of a contract conflict with the plaintiffs' allegations in their complaint, the contract controls"). This rule applies with force again where, as here, the Amended Complaint was filed *after discovery was completed*, when Plaintiffs have had full access to information. *See Cain v. Lane*, 985 F.2d 563, 1993 WL 4847 (7th Cir. Jan. 11, 1993) (upholding dismissal with prejudice where amended complaint was filed after close of discovery).[2]

[2] Plaintiffs also misstate the Rule 12(b)(6) standard and cite pre-*Twombly* case law. (*See* Dkt. #36 at 4). Under the correct standard, the Amended Complaint must be dismissed if it fails to include sufficient facts "to state a claim for relief that is plausible on its face." *Cole v. Milwaukee Area Technical Coll. Dist.*, 634 F.3d 901, 903 (7th Cir. 2011) (emphasis added) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *Five Star Airport Alliance, Inc. v. Milwaukee Cnty.*, No. 12-C-655, 2013 WL 1949606, at *1 (E.D. Wis. May 8, 2013) (same). Moreover, contrary to Plaintiffs' characterization that they are owed the benefit of all "possible inferences" (*see* Dkt. #36 at 4), on a motion to dismiss the court draws only "*reasonable* inferences in the plaintiff's favor" and any "legal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to this presumption." *Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011) (citing *Ashcroft v. Iqbal*, 556 U.S. 680-81 (2009)) (emphasis supplied).

## I. Plaintiffs' Opposition Confirms That Plaintiffs Have Failed To State A Claim For Breach Of Contract

### A. Plaintiffs' Breach Of Contract Claim Fails Because It Is Inconsistent With The Policy

As noted above, the Amended Complaint's core contention was that the Policy calls for a yearly "deduction from the cash value" that pays off any accruing loan interest. (Dkt. #31 at ¶48 (Policy "obligated [Independence] to *deduct interest charges on Policy loans from the cash value* if not paid on policy anniversaries"); ¶49 ("Independence has breached their contracts [by] . . . failing to apply the *amounts deducted from the cash value* to the loan interest and by overcharging interest on policy loans")) (emphasis supplied). Independence refuted that claim by showing that it is inconsistent with the clear Policy terms. (Dkt. #33 at 5-7).[3]

Plaintiffs cannot salvage their breach of contract claim by arguing an alternative theory that the loan interest was somehow "paid" each year—not by deduction from the Policy's Cash Value, but rather by virtue of a transfer of funds from the Sub-Accounts. (Dkt. #36 at 6-7 ("[T]he Plaintiffs allege that they paid the annual loan interest charge . . . when Defendant removed the 4.7% interest charge annually from the Plaintiffs' Sub-Accounts.")). That theory has several flaws.

Plaintiffs' alternative theory is inconsistent with the Policy. Plaintiffs are correct that, when loan interest comes due each year, the loan balance grows and a dollar amount corresponding to the increase is transferred out of the Sub-Accounts. (Dkt. #34-1 at 8). However, the critical flaw of Plaintiffs' theory is that the transferred funds have not been "paid"

---

[3] Plaintiffs take inconsistent positions in alleging how the Policy functions. Plaintiffs' Amended Complaint alleges that interest is deducted from cash value. (*See* Dkt. #31, ¶¶ 48-49 (alleging that Independence was "obligated [. . .] to deduct interest charges on Policy loans from the cash value if not paid on policy anniversaries[.]")). However, Plaintiffs' Opposition takes the novel position that loan interest was "paid" by virtue of a transfer from the Sub-Accounts. (Dkt. #36, p. 6-7 ("[T]he Plaintiffs allege that they paid the annual loan interest charge [. . .] when Defendant removed the 4.7% interest charge annually form the Plaintiff's Sub-Accounts.")) After months of written and oral discovery Plaintiffs are still unable to articulate a consistent theory regarding how the Policy functions. In reality, both of the theories provided by Plaintiff are incorrect and ignore fundamental language in the Policy.

to Independence. Rather, the Policy provides that *they are transferred into Plaintiffs' General Account balance*, where they are still included within the Cash Value. (Dkt. #33 at 3; Dkt. #34-1 at 7 (defining Cash Value to include General Account balance); *id.* at 8 ("Assets equal to the amount of the loan will be taken by proportion from the Sub-Accounts . . . [and] will be transferred to our [G]eneral [A]ccount and will earn interest at the rate of 4% a year")). In other words, Plaintiffs' entire theory of liability is premised on *ignoring what happens to transferred funds after they leave the Sub-Accounts.* Instead, they focus only on the transfer out of the Sub-Accounts and end their analysis there. They do this in order to create the misleading impression that those funds have been paid to *Independence*, but fail to acknowledge that the transferred funds are sent to *Plaintiffs'* General Account balance and continue to accrue interest.

Once the General Account balance is taken into consideration, Plaintiffs' theory that the yearly loan interest has been "paid" crumbles. For instance, page 10 of Plaintiffs' Opposition includes a chart that purports to show values that decrease each year as a result of accruing loan interest and transfers out of the Sub-Accounts. But the chart is incorrect because it omits a row showing the increasing General Account balance. Once that row is added, it becomes clear that Policy values do not decrease, and no loan interest has been paid to Independence via yearly transfers. Appendix A, attached hereto, contains a mark-up of Plaintiffs' chart adding the General Account balance.

Furthermore, apart from their failure to acknowledge the General Account, Plaintiffs' interpretation of the word "paid" renders unintelligible and superfluous the language appearing on Policy page 8 that, "[i]f interest is not paid by the end of the policy year, it will be added to the principal of the loan and will bear interest." (Dkt. #34-1 at 8). If, as Plaintiffs assert, loan interest is always, automatically "paid" via a Sub-Account transfer, then the above-quoted

provision, which unquestionably contemplates situations in which "interest is not paid" and is "added to the principal" would make no sense. A contract interpretation that renders provisions superfluous or unintelligible cannot be accepted. *Wiesmueller v. Interstate Fire & Cas. Co.*, 568 F.2d 40, 44 (7th Cir. 1978) (interpreting insurance contract, "no part of the language used can be rejected as superfluous or unmeaning") (quoting *Rabinovitz v. Travelers Ins. Co.*, 105 N.W.2d 807, 811 (Wi. 1960)); *Mullins' Whey, Inc. v. McShares, Inc.*, No. 04-C-0130, 2005 WL 1154281, at *3 (E.D. Wis. May 10, 2005) (Griesbach, J.) ("Interpretations which render insurance contract language superfluous are to be avoided where a construction can be given which lends meaning to the phrase").

Likewise, Plaintiffs' interpretation of the word "paid" does not comport with how any reasonable person would understand the term. *Kennedy v. Nat'l Juvenile Det. Ass'n*, 187 F.3d 690, 694 (7th Cir. 1999) ("In construing the contract, terms are to be given their plain and ordinary meaning."). As Independence explained in its Memorandum, the yearly transfer to the General Account amounts to the *putting up of collateral* against the increasing loan balance. (Dkt. #33 at 3-4). Specifically, placing funds in the General Account protects those funds from market risk. Putting up collateral for a loan is not equivalent to "paying off" a loan. When someone takes a mortgage and they put their house up as collateral, no one would say that doing so means the mortgage has already been "paid" off. However, that is exactly the implausible meaning of "paid" that Plaintiffs are advancing.

Plaintiffs cannot alter the result by arguing that "there is absolutely no provision in the Policy" permitting yearly transfers from the Sub-Accounts into the General Account. (Dkt. #36 at 8). That is incorrect because Policy page 8 states that yearly loan interest "will be added to the principal of the loan" and that "[a]ssets equal to the amount of the loan . . . will be transferred to

our [G]eneral [A]ccount[.]" (Dkt. #34-1 at 8). Thus, when the loan indebtedness grows each year, corresponding assets are transferred to the General Account. This makes perfect sense because, again, the point of the transfer is to protect the loan collateral from market risk. This need for protection applies with equal force to funds that happen to be part of the initial loan, and to funds added to the loan balance as it grows.[4] This Policy language permitting yearly transfers also disposes of Plaintiffs' incorrect argument (Dkt. #36 at 12) that the Policy is ambiguous.[5]

Finally, Plaintiffs cannot avoid dismissal by complaining that Independence has offered a "new interpretation" of the Policy. (*Id.* at 7). That makes no sense in the context of litigation where a Rule 12(b)(6) motion is Independence's *first opportunity* to explain its interpretation to the Court. And, although irrelevant and outside of the Rule 12(b)(6) record, Plaintiffs are wrong in asserting that deposition witnesses previously offered a different Policy interpretation.[6] Of course, even if Independence's interpretation is "new" (whatever that means), what matters is that the interpretation is *correct and dispositive*.[7]

---

[4] Moreover, Plaintiffs' (incorrect) argument that yearly transfers are not allowed (Dkt. #36 at 7-8) renders their theory of liability incomprehensible and internally inconsistent. The yearly transfers are the mechanism by which Plaintiffs now assert that the interest was supposedly "paid" in the first place.

[5] Plaintiffs have failed to identify a reasonable alternative construction of the Policy that would necessitate factual findings, and their citation to *Flexscripts Administrators, LLC v. Herr Foods, Inc.*, 2013 WL 5178166 (E.D. Wis. Sept. 13, 2013) concerning contract ambiguity is not relevant.

[6] Deposition testimony is not appropriately part of the Rule 12(b)(6) record. *Edmonds v. Operating Engineers Local 139*, No. 08-CV-567-BBC, 2009 WL 56929, at *1 (W.D. Wis. Jan. 7, 2009) ("Generally, a court cannot consider documents outside the pleadings in deciding a motion to dismiss under Rule 12(b)(6)"). Regardless, the testimony does not support the proposition that Independence ever offered a differing interpretation of the Policy. For instance, Plaintiffs complain that Independence's "most knowledgeable witness concerning policy loans did not mention taking any amount from the Sub-Accounts as collateral for annual loan interest." (Dkt. #36 at 6). This is a strange argument because *Plaintiffs took that deposition*, and they do not indicate that *they ever asked the witness* about transfers from the Sub-Accounts when yearly loan interest is not paid. Additionally, Plaintiffs' attempt to characterize Independence's expert testimony is equally unavailing. Independence's expert testified that assets are transferred from the Sub-Accounts to the General Account—exactly the interpretation Independence offers. (*Id.* at 6-7 & n.2). The expert also correctly explained that the indebtedness is ultimately "paid" to Independence (either when a policyholder writes a check to pay it, or at death)—no other position makes sense; even Plaintiffs do not deny that the interest must at some point be paid.

[7] Plaintiffs are not saved by their allegation that their expert would opine that Plaintiffs were overcharged. (Dkt. #36 at 6). Plaintiffs must plead an interpretation that is consistent with the Policy, or their case must be dismissed. The fact that Plaintiffs may be able to produce an individual that would bolster an argument that is in direct conflict with the Policy language cannot manufacture a disputed question of fact.

### B. Plaintiffs' Example Concerning the Death Benefit Backfires and Spotlights Why Their Interpretation Is Wrong

Plaintiffs' Opposition offers four bullet points purporting to show that Independence's interpretation of the Policy would lead to a double-charge of loan interest at the time of the insured's death. (Dkt. #36 at 11). Although not entirely clear, Plaintiffs seem to be arguing that there is a double-charge because loan interest is deducted from the death benefit (i) at the time of the yearly transfer of loan interest out of the Sub-Accounts and then (ii) at death when indebtedness is subtracted from the death benefit paid. (*Id.*).

However, Plaintiffs misread the Policy—there is in fact no double-charge. Page 9 of the Policy governs death benefits and provides that a death benefit "payable on death" (hereinafter "Death Payment") is payable to the beneficiaries upon the death of the insured. (Dkt. #34-1 at 9). The Death Payment is equal to a "Variable Death Benefit" minus any outstanding indebtedness (*i.e.*, the loan balance). (*Id.*) The Variable Death Benefit, in turn, is a sum that fluctuates during the life of the insured based on the *performance* of the Sub-Accounts. (*Id.*)

What Plaintiffs get wrong in their bulleted example is that yearly transfers out of the Sub-Accounts do *not* decrease the Variable Death Benefit. The Variable Death Benefit changes based on the *performance* of the Sub-Accounts, and not due to any deduction from the Sub-Accounts.[8] (Dkt. #34-1 at 9). Thus, if $5 is transferred from the Sub-Accounts to the General Account (*e.g.*, because that amount of loan interest has accrued), *that transfer does not decrease the Variable Death Benefit by even a penny*. (*Id.*) Instead, the first and only time that outstanding indebtedness is subtracted from the death benefit is at death—*that* is the one and

[8] Specifically, the Variable Death Benefit increases if the Sub-Accounts earn an annual rate of return of more than 4% for the year, and it decreases if the Sub-Accounts earn less than 4% for the year. (Dkt. #34-1 at 6 (defining "Base Investment Return" and "Actual Investment Return")).

only time that Independences receives its repayment of the indebtedness.[9] There is no double-charge.

If anything, Plaintiffs' example backfires and a proper understanding of the death benefit proves that their theory is wrong. The fact that the death benefit that Independence will ultimately owe does not decrease as a result of yearly transfers from the Sub-Accounts is a further illustration of why those yearly transfers cannot properly be understood as a "payment" of interest to Independence.

## II. Plaintiffs' Opposition Confirms That They Have Failed To State A Claim For Breach of Fiduciary Duty

In its Memorandum, Independence showed that because it is not a fiduciary, there can be no claim for breach of fiduciary duty. (Dkt. #33 at 7-8). Plaintiffs respond by citing three cases, but none alters the result. The first case, *Zastrow v. Journal Comm. Inc.*, has nothing to do with insurance companies, and is totally irrelevant.[10] *See* 291 Wis. 2d 426, 718 N.W.2d 51 (2006). Moreover, *Zastrow* cites *Croft*, to which Independence referred in its Memorandum (Dkt. #33 at 7). *Croft* states that a lender-borrower relationship does not create a fiduciary duty. *Production Credit Ass'n of Lancaster v. Croft*, 143 Wis. 2d 746, 753, 423 N.W.2d 544, 546 (Ct. App. 1988).

The second case, *DeChant v. Monarch Life Ins. Co.*, concerns an insurer's duties that arise when the insured makes a claim for payment against a disability policy. *See* 200 Wis. 2d

[9] Plaintiffs' Opposition briefly refers to the prospectus, and offers a misleading argument that it is part of the Policy. (Dkt. #36 at 11). However, this grossly mischaracterizes the Policy application by stating that it includes a representation that the policyholder read and understood the Prospectus and that the statements in the application 'will form part of the policy,'" (*Id.* at 3, 11). In reality, the application includes a single question regarding the Prospectus: "Did you receive the Prospectus (if Yes, give the date of the Prospectus)." (*See* Dkt. #37-1 at 19). Confirmation that the Plaintiffs *received* the Prospectus is hardly sufficient to incorporate the Prospectus into the Policy, particularly where the Policy lists what is part of the contract, and the list does not include the prospectus. (*See* Dkt. #34-1 at 4 ("This policy with the application and papers is the entire contract")); *Prusky v. Prudential Ins. Co. of America*, No. 02-1004, 44 Fed. App'x 545, 547 (3d Cir. Aug. 1, 2002) (affirming district court's holding that prospectus was not part of an insurance contract where policy stated "[t]his policy and any attached copy of an application, including an application requesting a change, form the entire contract").

[10] In *Zastrow*, former employees of a printing company sued the trustees of an employee stock trust for breach of fiduciary duty for failing to provide the employees with complete information regarding retirement investment holdings. *See* 291 Wis. 2d at 445-46, 718 N.W.2d at 60-61.

559, 547 N.W. 2d 592, 596 (Wis. 1996) (holding, in the context of a dispute over payment of full disability benefits under a policy, that "[a]n insurer has a special 'fiduciary' relationship to its insured"). Irrespective of whether a fiduciary relationship may exist in the context of claims payment, Plaintiffs cite no authority for the proposition that there is a fiduciary duty outside the context of paying claims. *Duir v. John Alden Life Ins. Co.*, 573 F. Supp. 1002, 1010 (W.D. Wis. 1983) ("the only duty of a true fiduciary nature owed an insured by an insurer arises in the context of claims settlement of third-party liability claims."); *Prosser v. Leuck*, 225 Wis. 2d 126, 138, 592 N.W.2d 178, 182 (Wis. 1999) (explaining the basis of the fiduciary duty is the giving up of the insured's right to defend and settle a claim).

The final case cited by Plaintiffs, *Noonan v. Northwestern Mut. Life. Ins. Co.*, *refutes* their position. *See* 276 Wis. 2d 33, 687 N.W.2d 254 (Wis. Ct. App. 2004). The case concerned an annuity contract, and the court explained that an insurer is typically *not* a fiduciary. *Id.* at ¶¶ 19-20. However, the annuity in *Noonan* was atypical, insofar as it obligated the insurance company to share in the company surplus profits and, by law, the insurance company had to ensure the surplus was "equitably apportioned and returned as a dividend to the participating policyholders . . . ." *Id. at* ¶ 23. To that extent, the insurer was a fiduciary. *Id.* at ¶ 25. There is no analogue in this case.

## III. Plaintiffs' Opposition Confirms That They Have Failed To State A Claim For Bad Faith

Plaintiffs admit that they must prove the absence of reasonable good faith to succeed on a claim of bad faith. (Dkt. #36 at 13). This admission is dispositive here because, as Independence established, the Amended Complaint does not plead any facts demonstrating scienter. (Dkt. #33 at 8). The Amended Complaint alleges that Independence violated the Policy by compounding loan interest. (Dkt. #31 at ¶¶ 79-82). However, it fails to allege any facts

demonstrating that Independence either knew that there was no reasonable basis for its action or acted with reckless disregard. Plaintiffs' Opposition baldly asserts that the Amended Complaint alleges that Independence knowingly violated the Policy, but Plaintiffs fail to cite to any paragraph in the Amended Complaint that says as much. (*See* Dkt. #36 at 14). Such a conclusory allegation is insufficient to survive a motion to dismiss. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (requiring factual allegations "raise a right to relief above the speculative level"); *Swanson v. Citibank, N.A.*, 614 F. 3d 400, 404 (7th Cir. 2010) ("[P]laintiff must give enough details about the subject-matter of the case to present a story that holds together").

## IV. Plaintiffs' Opposition Confirms That They Have Failed To State A Cognizable Claim For Injunction or Declaratory Judgment

Plaintiffs have abandoned their request for a declaration that no loan balance exists (Dkt. #36 at 16). The parties therefore agree that claim should be dismissed. Plaintiffs also do not dispute that the Declaratory Judgment Act permits a court to declare the parties' legal relations, and does not provide an independent cause of action. *See In re Joint E. & S. Dist. Asbestos Litig.*, 14 F.3d 726, 731 (2d Cir. 1993) (citing *Aetna Life Ins. Co.*, 300 U.S. 227, 240 (1937)). Thus, Plaintiffs' claim for a declaration that Independence "may not compound interest from year to year on loans related to a Policy, while at the same time withdrawing the loan interest amount from sub-accounts" fails. Finally, Plaintiffs also now admit that injunctive relief is a remedy and not a cause of action (Dkt. #36 at 16) so that claim too should be dismissed.

## V. Plaintiffs' Opposition Confirms That They Have Failed To State A Claim For Violation of the Securities Act of 1933

### A. Statute of Repose

As explained in Independence's Memorandum, Plaintiffs' Securities Act claim is barred by the statute of repose. (Dkt. #33 at 12-13). The repose period runs from the date of sale,

which occurred on January 7, 1987. Plaintiffs attempt to manufacture a later sales date by arguing—without any citation—that "the sale of the Policy is ongoing since the McCormicks have been forced to make additional payments to keep the Policy from being cancelled" (Dkt. #36 at 15). This argument is wrong. *See Adams v. Cavanagh Communities Corp.*, 847 F. Supp. 1390, 1406, 1410-11 (N.D. Ill 1994) (holding that the "date of sale" for purposes of a statute of limitations is the date upon which the parties "entered into their investment contracts, not the date upon which the final installment payments on those contracts were due"). The sale of the security occurred when Plaintiffs paid the premium to acquire the Policy in 1987. *See id.* at 1405.

Moreover, the doctrines of equitable estoppel and equitable tolling do not apply to statutes of repose. The Supreme Court has held that "[b]ecause the purpose of the 3-year limitation is clearly to serve as a cutoff, we hold that tolling principles do not apply to that period." *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 363 (1991). The Seventh Circuit has been even more explicit, holding that "'[t]he rule in the federal courts is that both tolling doctrines—equitable estoppel and equitable tolling—are . . . grafted on to federal statutes of limitations,' but 'neither tolling doctrine applies to statutes of repose; their very purpose is to set an outer limit unaffected by what the plaintiff knows.'" *McCann v. Hy-Vee, Inc.*, 663 F.3d 926, 930 (7th Cir. 2011) (quoting *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 451 (7th Cir. 1990)). In light of this precedent, Plaintiffs citation to *Holmberg v. Armbrecht*, 327 U.S. 392, 397 (1946) (an opinion decided almost fifty years before *Lampf* and only discussing statutes of limitation generally—not statutes of repose) and *Bomba v. W.L. Belvidere, Inc.*, 579 F.2d 1067, 1070 (7th Cir. 1978) (a thirty-five year old opinion discussing the

potential for equitable tolling under the Interstate Land Sales Full Disclosure Act) cannot save Plaintiffs' Securities Act claim.

**B. Tender**

As Independence has already established—and which Plaintiffs do not dispute—tender of the security is a prerequisite to recovery. *Sweeny v. Keystone Provident Life Ins. Co.*, 578 F. Supp. 31, 33 (D. Mass 1983) (Section 12 "claim is contingent on tendering the security to defendant"); *Anisfeld v. Cantor Fitzgerald & Co., Inc.*, 631 F. Supp. 1461, 1464 (S.D.N.Y. 1986) (absent tender, Section 12 count is "subject to dismissal on that aspect alone.").

The cases that Plaintiffs cite provide no support for their attempts to avoid dismissal for lack of tender. *Randall* discusses the purpose of the *rescissionary remedy, not the tender requirement*. *Randall v. Loftsgaarden*, 478 U.S. 647, 659 (1986). And in *Adair*, after noting that the statute does not prescribe a specific time for the tender, the district court dismissed the Section 12 claim finding that "the complaint contains no offer to tender the securities, nor does it contain an express demand for rescission from which such an offer may be implied." *Adair v. Hunt Intern. Resources Corp.*, 526 F. Supp. 736, 748 (D.C. Ill. 1981) (internal quotation omitted). Pursuant to *Adair,* Plaintiffs' failure to tender forecloses their Securities Act claim.

**C. Loss Causation**

Plaintiffs' Opposition also establishes a loss causation defense. Plaintiffs do not dispute that, in order to establish loss causation, they need to have read the challenged Prospectus. (*Compare* Dkt. #33 at 14 (outlining the Amended Complaint's failure to establish loss causation) *with* Dkt. #36 at 15 (failing to challenge the loss causation requirement for a Section 12 claim)).

This requirement is dispositive because Plaintiffs fail to allege in the Amended Complaint—or even in their Opposition—that they read the allegedly misleading Prospectus. Plaintiffs' assertion that the application includes a representation that Plaintiffs' have "read and

understood the Prospectus" (Dkt. #36 at 15) is incorrect—it does not say anything about what has been read. (*See* Dkt. #37-1 at 19 (asking only if Plaintiffs "*received* the Prospectus" and "[i]f yes, give the date of Prospectus") (emphasis added)).

If anything, Plaintiffs' Opposition actually confirms that dismissal is required on loss causation grounds because Plaintiffs argue that the *prospectus representations were immaterial*. (*See* Dkt. #36 at 18 ("Even if the Prospectus was a basis for liability . . . such a misrepresentation is not alleged by the Complaint to be 'objectively material to [the Plaintiffs'] or any class members' investment decisions")). If the prospectus was not material to the Plaintiffs, then it did not cause their losses.

Similarly, Plaintiffs now assert that the prospectus was *consistent* with the Policy. (*Id.* at 11, 14). If that is so, then there is no alleged misrepresentation to begin with, and no loss (or falsity).

**VI. Plaintiffs' Opposition Confirms That SLUSA Preemption Applies**

Finally, in an attempt to avoid SLUSA preemption, Plaintiffs now disavow the notion that their Amended Complaint asserts misrepresentation. (*Id.* at 17). However, those disclaimers cannot change the fact that the Amended Complaint clearly tethers the state law claims to misrepresentations. (*See, e.g.*, Dkt. #31 at ¶ 68 ("The various statements made by Independence are untrue statements of material facts or represent the omission of a material fact . . . ."), and their Opposition asserts that these claims are brought in connection with the ongoing sale of a security.[11] (Dkt. #36 at 15). Accordingly SLUSA preempts their class claim.

[11] *Appert v. Morgan Stanley Dean Witter, Inc.*, 673 F.3d 609 (7th Cir. 2012) is inapplicable because it concerned the irrelevant issue of a broker's handling and administrative fees.

Of course, in the event that the Court were to accept Plaintiffs' disclaimer that they are not pursuing allegations of misrepresentation, then the Section 12 claim should be dismissed because misrepresentation is a required element of that claim. 15 U.S.C. 77l(a)(2).

**CONCLUSION**

For all of the foregoing reasons, the Court should grant Independence's Motion to Dismiss the Amended Complaint. Independence also requests any other and further relief that the Court may deem appropriate.


MICHAEL BEST & FRIEDRICH LLP

S/ Paul E. Benson
Paul E. Benson, Esq., SBN 1001457
pebenson@michaelbest.com
Zachary J. Watters, Esq., SBN 1082178
zjwatters@michaelbest.com
100 East Wisconsin Avenue
Suite 3300
Milwaukee, WI 53202-4108
Tel.: (414) 271-6560
Fax: (617) 277-0656

WILMER CUTLER PICKERING
HALE AND DORR LLP

Andrea J. Robinson
andrea.robinson@wilmerhale.com
Timothy Perla
timothy.perla@wilmerhale.com
Seth B. Orkand
seth.orkand@wilmerhale.com
60 State Street
Boston, MA 02116
Tel.: (617) 526-6000
Fax: (617) 526-5000

*Attorneys for Defendant Independence Life and Annuity Company*

## APPENDIX A

*Table from Plaintiffs' Opposition page 9: Corrected to Include Missing General Account Balance*

| **Independence** | YR 1 | | YR 2 | | YR 3 |
|---|---|---|---|---|---|
| Sub-Accounts | $ 1,000.00 | | $ 899.30 | | $ 898.57 |
| | | | | | |
| Loan | $ 100.00 | | $ 104.70 | | $ 109.62 |
| | | | | | |
| 4.7% on Loan Charge | $ 4.70 | | $ 4.92 | | $ 5.15 |
| | | | | | |
| 4% Interest on Loan | $ 4.00 | | $ 4.19 | | $ 4.38 |
| | | | | | |
| Loan Indebtedness | $ 104.70 | | $ 109.62 | | $ 114.77 |
| | | | | | |
| ***General Account Balance*** | ***$ 104.70*** | | ***$ 109.62*** | | ***$ 114.77*** |
| | | | | | |
| Sub Account | $ 899.30 | | $ 898.57 | | $ 897.80 |
| | | | | | |
| ***Correct Cash Value*** | ***$ 1004.00*** | | ***$ 1008.19*** | | ***$ 1012.57*** |



Case 1:12-cv-00763-WCG Filed 10/23/13 Page 16 of 16 Document 41