UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

JOSEPH C. MCCORMICK and
MARY C. MCCORMICK,

               Plaintiffs,

       v.                                    Case No. 12-CV-763

INDEPENDENCE LIFE AND ANNUITY
COMPANY,

               Defendant.

**APPENDIX OF UNREPORTED CASES IN SUPPORT OF DEFENDANT,
INDEPENDENCE LIFE AND ANNUITY COMPANY'S REPLY IN SUPPORT ITS
MOTION TO DISMISS**

MICHAEL BEST & FRIEDRICH LLP

Paul E. Benson, Esq., SBN 1001457
pebenson@michaelbest.com
Zachary J. Watters, Esq., SBN 1082178
zjwatters@michaelbest.com
100 East Wisconsin Avenue
Suite 3300
Milwaukee, WI 53202-4108
Tel.: (414) 271-6560
Fax: (617) 277-0656

WILMER CUTLER PICKERING
HALE AND DORR LLP

Andrea J. Robinson (*admission pending*)
andrea.robinson@wilmerhale.com
Timothy Perla (*admission pending*)
timothy.perla@wilmerhale.com
Seth B. Orkand (*admission pending*)
seth.orkand@wilmerhale.com
60 State Street
Boston, MA 02116
Tel.: (617) 526-6000
Fax: (617) 526-5000

*Attorneys for Defendant Independence Life and Annuity Company*

## UNREPORTED CASES

*Cain v. Lane*,
  985 F.2d 563, 1993 WL 4847 (7th Cir. Jan. 11, 1993)

*Edmonds v. Operating Engineers Local 139*,
  No. 08-CV-567-BBC, 2009 WL 56929 (W.D. Wis. Jan. 7, 2009)

*Five Star Airport Alliance, Inc. v. Milwaukee Cnty.*,
  No. 12-C-655, 2013 WL 1949606 (E.D. Wis. May 8, 2013)

*More v. Callahan*,
  No. 12-CV-905-BBC, 2013 WL 4718333 (W.D. Wis. Sept. 3, 2013)

*Mullins' Whey, Inc. v. McShares, Inc.*,
  No. 04-C-0130, 2005 WL 1154281 (E.D. Wis. May 10, 2005)

*Prusky v. Prudential Ins. Co. of America*,
  No. 02-1004, 44 Fed. App'x 545 (3d Cir. Aug. 1, 2002)

Unpublished Disposition

985 F.2d 563

NOTICE: THIS IS AN UNPUBLISHED OPINION.

(The Court's decision is referenced in a "Table of Decisions Without Reported Opinions" appearing in the Federal Reporter. Use FI CTA7 Rule 53 for rules regarding the citation of unpublished opinions.)

United States Court of Appeals, Seventh Circuit.

James L. CAIN, Plaintiff/Appellant,

v.

Michael P. LANE, et al., Defendants/Appellees.

No. 91-3336. | Submitted Dec. 10, 1992.[*] | Decided Jan. 11, 1993.

---

[*] After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." *See* Fed.R.App.P. 34(a); Cir.R. 34(f). No such statement having been filed, the appeal has been submitted on the briefs.

---

Appeal from the United States District Court for the Central District of Illinois, Danville Division, No. 88 C 2372; Harold A. Baker, D.J.

C.D.Ill.

AFFIRMED.

Before COFFEY and EASTERBROOK, Circuit Judges, and WOOD, JR., Senior Circuit Judge.

**Opinion**

**ORDER**

 **\*1** James Cain filed an action under 42 U.S.C. § 1983 against various correctional officers, alleging violations of his constitutional rights. Six months after discovery was closed, Cain filed a motion to compel discovery. In an order dismissing Cain's complaint for failure to state a claim, Fed.R.Civ.P. 12(b)(6), the district court also denied Cain's motion to compel. The district court also allowed Cain to file an amended complaint, with the possibility of reopening discovery. The district court dismissed Cain's amended complaint with prejudice for failure to state a claim. However, Cain does not raise any arguments challenging the dismissal of his amended complaint. The only issue Cain raises on appeal is whether the district court abused its discretion by denying Cain's motion to compel.

Cain argues that his complaint was dismissed because the district court refused to grant his motion to compel. He argues that he needed discovery in order to properly establish his claim. Plaintiffs are not entitled to discovery for the purpose of surviving a motion to dismiss. *See Strauss v. City of Chicago,* 760 F.2d 765 (7th Cir.1985).

AFFIRMED.

**Parallel Citations**

1993 WL 4847 (C.A.7 (Ill.))

---

**End of Document**

© 2013 Thomson Reuters. No claim to original U.S. Government Works.

© 2013 Thomson Reuters. No claim to original U.S. Government Works. 1





---



Page 1

Not Reported in F.Supp.2d, 2009 WL 56929 (W.D.Wis.)
**(Cite as: 2009 WL 56929 (W.D.Wis.))**

**H**

Only the Westlaw citation is currently available.

**This decision was reviewed by West editorial staff and not assigned editorial enhancements.**

United States District Court,
W.D. Wisconsin.
Franklin C. EDMONDS, Plaintiff,
v.
OPERATING ENGINEERS LOCAL 139, Defendant.

No. 08–cv–567–bbc.
Jan. 7, 2009.

Franklin C. Edmonds, Madison, WI, pro se.

ORDER

STEPHEN L. CROCKER, United States Magistrate Judge.

**\*1** This is a civil action for monetary relief in which plaintiff Franklin Edmonds, who is proceeding pro se, alleges that he has been discriminated against by defendant Operating Engineers Local 139. Defendant has filed a motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), and a briefing schedule has been set on this motion. In conjunction with this motion, defendant has filed a motion for leave to present to the court documents outside the pleadings and has submitted copies of those documents. The documents are docket sheets and filings in previous cases filed in this court and the District Court for the Eastern District of Wisconsin in which plaintiff sued defendant.

Generally, a court cannot consider documents outside the pleadings in deciding a motion to dismiss under Rule 12(b)(6); such documents do not become fair game unless they are attached to or at least referred to in the complaint. *Tierney v. Vahle,* 304 F.3d 734, 738 (7th Cir.2002). However, there is an exception to this rule: a court may consider "documents contained in the public record" without converting the motion into one for summary judgment. *Menominee Indian Tribe of Wisconsin v. Thompson,* 161 F.3d 449, 456 (7th Cir.1998). The court documents defendant has submitted are matters of public record and thus may be the subject of judicial notice. Therefore, defendant's motion for leave to present documents outside the pleadings (Dkt.# 9) is GRANTED.

W.D.Wis.,2009.
Edmonds v. Operating Engineers Local 139
Not Reported in F.Supp.2d, 2009 WL 56929 (W.D.Wis.)

END OF DOCUMENT



--- F.Supp.2d ----, 2013 WL 1949606 (E.D.Wis.)
**(Cite as: 2013 WL 1949606 (E.D.Wis.))**

**H**
Only the Westlaw citation is currently available.

United States District Court,
E.D. Wisconsin.
FIVE STAR AIRPORT ALLIANCE, INC., successor of The Horsley Company, LLC, Plaintiff,
v.
MILWAUKEE COUNTY, Defendant.

Case No. 12–C–655.
May 8, 2013.

**Background:** Bidder who had allegedly been awarded county contract to construct outbound baggage handling system at international airport filed suit against county seeking declaratory relief when county decided to reject all bids and present new request for proposals (RFP) for a combined inbound and outbound baggage handling system. County moved to dismiss.

**Holding:** The District Court, Rudolph T. Randa, J., held that RFP permitted county to withdraw its request, prior to signing a contract with qualified bidder.

Motion granted.

West Headnotes

**[1] Federal Civil Procedure 170A ⟨⟩1771**

170A Federal Civil Procedure
  170AXI Dismissal
    170AXI(B) Involuntary Dismissal
      170AXI(B)3 Pleading, Defects In, in General
        170Ak1771 k. In General. Most Cited Cases

Purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide its merits. Fed.Rules Civ.Proc.Rule 12(b)(6), 28 U.S.C.A.

**[2] Federal Civil Procedure 170A ⟨⟩1832**

170A Federal Civil Procedure
  170AXI Dismissal
    170AXI(B) Involuntary Dismissal
      170AXI(B)5 Proceedings
        170Ak1827 Determination
          170Ak1832 k. Matters Considered in General. Most Cited Cases

Exhibits attached to complaint for breach of contract were "pleadings," and thus, could be considered in resolving a motion to dismiss for failure to state claim. Fed.Rules Civ.Proc.Rule 10, 12(b)(6), 28 U.S.C.A.

**[3] Federal Civil Procedure 170A ⟨⟩1825**

170A Federal Civil Procedure
  170AXI Dismissal
    170AXI(B) Involuntary Dismissal
      170AXI(B)5 Proceedings
        170Ak1825 k. Motion and Proceedings Thereon. Most Cited Cases

Movant bears the burden of proving that the complaint fails to state a claim for relief.

**[4] Federal Courts 170B ⟨⟩383**

170B Federal Courts
  170BVI State Laws as Rules of Decision
    170BVI(B) Decisions of State Courts as Authority
      170Bk382 Court Rendering Decision
        170Bk383 k. Inferior State Courts. Most Cited Cases

If a state's highest court has not spoken on an issue, the decision of an intermediate state court controls decision of federal court sitting in diversity unless federal court is convinced by other persuasive data that the highest court of the state would decide otherwise.

**[5] Federal Courts 170B ⟨⟩371**

170B Federal Courts
  170BVI State Laws as Rules of Decision
    170BVI(A) In General

170Bk371 k. Nature and Extent of Authority. Most Cited Cases

If a federal court sitting in diversity is faced with two opposing and equally plausible interpretations of state law, it generally should choose the narrower interpretation which restricts liability, rather than the more expansive interpretation which creates substantially more liability.

**[6] Municipal Corporations 268 ⬤⟳241**

268 Municipal Corporations
    268VII Contracts in General
        268k234 Proposals or Bids
            268k241 k. Award to Lowest Bidder. Most Cited Cases

**Public Contracts 316H ⬤⟳149**

316H Public Contracts
    316HII Bidding and Bid Protests
        316Hk147 Determinative Factors in Making Award
            316Hk149 k. Lowest Bid. Most Cited Cases

Under Wisconsin law, a city cannot be compelled to award a contract to the lowest bidder. W.S.A. 59.52(29)(a).

**[7] Public Contracts 316H ⬤⟳164**

316H Public Contracts
    316HII Bidding and Bid Protests
        316Hk160 Judicial Remedies and Review
            316Hk164 k. Scope of Review. Most Cited Cases

A reviewing court will only interfere with a bidding authority's discretionary act if it is arbitrary or unreasonable.

**[8] Counties 104 ⬤⟳22**

104 Counties
    104II Government
        104II(A) Organization and Powers in General
            104k22 k. Public Improvements. Most

Cited Cases

**Public Contracts 316H ⬤⟳156**

316H Public Contracts
    316HII Bidding and Bid Protests
        316Hk152 Award
            316Hk156 k. Failure to Enter Into Contract; Cancellation of Solicitation. Most Cited Cases

Under Wisconsin law, county's request for proposals (RFP) to construct outbound baggage handling system at international airport permitted county to withdraw its request, prior to signing a contract with qualified bidder, and resubmit RFP for a combined outbound/inbound system which would save the county approximately one million dollars, since city ordinance provided that in the bidding process, the county reserved the right to "accept or reject all bids, or cancel the entire bid, in its best interest."

James M. Thomas, Law Office of James Thomas, Seattle, WA, Shannon M. Trevithick, Britton & Associates SC, Milwaukee, WI, for Plaintiff.

Joseph P. Trevino, Alan L. Farkas, Michael R. Vescio, Smithamundsen LLC, Kimberly R. Walker, Timothy R. Karaskiewicz, Milwaukee, WI, for Defendant.

### DECISION AND ORDER

RUDOLPH T. RANDA, District Judge.

**\*1** This diversity action for injunctive and/or mandamus relief and declaratory judgment arises out of the bid that Horsley Company, LLC ("Horsley") made to construct an outbound baggage system for General Mitchell International Airport, located within Milwaukee County Wisconsin. Five Star Airport Alliance, Inc. ("Five Star"), Horsley's successor-in-interest by merger, is the current plaintiff.

Presently pending are the Defendant Milwaukee County's (the "County") motion to dismiss the Second Amended Complaint ("Complaint") pursuant to Rule 12(b)(6) of the Federal Rules of Civil

Procedure and Five Star's motion, pursuant to Fed.R.Civ.P. 60(b)(2), (b)(3), and (b)(6), for relief from the order denying its motion for a preliminary injunction. (ECF Nos. 46 & 35.) For the following reasons the Court grants the County's motion to dismiss, and dismisses this action and Five Star's motion for relief from order.

## MOTION TO DISMISS

[1][2] The following standards apply to consideration of the County's motion to dismiss. Federal Rule of Civil Procedure 12(b)(6) allows dismissal of a suit based on the plaintiff's failure to state a claim upon which relief can be granted. In order for a plaintiff to survive a Rule 12(b)(6) motion to dismiss, a plaintiff "must plead some facts that suggest a right to relief that is beyond the 'speculative level.' " *Atkins v. City of Chicago,* 631 F.3d 823, 832 (7th Cir.2011) (quoting *In re marchFIRST Inc.,* 589 F.3d 901, 905 (7th Cir.2009)). The purpose of a motion to dismiss, however, is to test the sufficiency of the complaint, not to decide its merits. *See Gibson v. City of Chicago,* 910 F.2d 1510, 1520 (7th Cir.1990). When analyzing its sufficiency, the Court construes a complaint in the light most favorable to the plaintiff, accepts well-pleaded facts as true, and draws all inferences in the plaintiff's favor. *Estate of Davis v. Wells Fargo Bank,* 633 F.3d 529, 533 (7th Cir.2011). Under Rule 10(c), "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." *See also, Cole v. Milwaukee Area Technical Coll. Dist.,* 634 F.3d 901, 903 (7th Cir.2011) (citing *Justice v. Town of Cicero,* 577 F.3d 768, 771 (7th Cir.2009)). Thus, the eleven exhibits attached to the Complaint are a part of the document, and may be considered in resolving a motion to dismiss under Rule 12(b)(6).

[3] The movant bears the burden of proving that the complaint fails to state a claim for relief. *Yeksigian v. Nappi,* 900 F.2d 101, 104 (7th Cir.1990). However, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal,* 556 U.S. 662, 678,

129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). The complaint will be dismissed if it fails to include sufficient facts "to state a claim for relief that is plausible on its face." *Cole,* 634 F.3d at 903 (citations omitted).

## Relevant Facts

*2 The core facts of Five Star's claim are as follows. The County owns and operates General Mitchell International Airport. The County solicited public bids for the outbound leg of a new baggage handling system. On February 22, 2012, Horsley, a qualified bidder, submitted a bid for "Baggage Screening Improvements—Phase C, Checked Baggage Inspection System ("CBIS") (Project A044–09002–03), (the "Project") to the County. Diversified Conveyors, Inc. ("Diversified"), another company involved in conveyor systems, also bid on the Project, but was not a qualified bidder.

On February 23, 2012, Timothy M. Kipp ("Kipp"), the County's Managing Engineer–Design for the Project, formally notified Horsley that it was the Project's low bidder. On March 22, 2012, Freida Webb, the County Director of Community Business Development Partners, formally notified Horsley that all questions about whether Horsley had met or exceeded the requirements for the County's goal of good faith effort to involve "DBE" [FN1] participation on the Project had been resolved in its favor.

On March 28, 2012, Kipp, on behalf of the County, sent Horsley a letter and the contract for the Project, and requested that Horsley sign and return the contract "for review and execution by [the] County." The final sentence of the letter states that "[n]o actual agreement exists until you are in receipt of an agreement executed by [the] County." (Complaint, Ex. 4, 2.) (ECF No. 14.) The County never provided executed copies of the proposed contract to Horsley.

Sometime after April 18, 2012, County officials told Horsley that the County had not signed

the contract due to a bid protest by Diversified. On May 10, 2012, Kipp, on behalf of the County, sent Horsley an email stating that all bids were being rejected and that the County was "planning on rebidding the project in the near future." (Compl. Ex. 6.) (ECF No. 45–6.) The email quotes a portion of the Project specifications stating "[the] County reserves the right to reject any or all proposals ... advertise for new proposals; or proceed with the work otherwise. All such actions shall promote the County's best interests." (*Id.*)

On May 11, 2012, Horsley delivered a formal bid protest to the County. After being informed that its bid protest was insufficient, Horsley filed a supplemental bid protest with the County on May 17, 2012. The County never responded to Horsley's bid protest.

On about June 21, 2012, the County sent Horsley a "Request for Qualifications" concerning a new bid for work on a "combination" outbound/inbound baggage system. The County subsequently put the outbound and inbound luggage systems out for bid as two separate contracts, stating:

• The inbound baggage system work will be managed separately from the outbound CBIS;

• The general construction contractor and construction manager will be separate from the outbound CBIS; and

• The inbound system scope of work will have a different DBE participation goal, have separate construction documents and be invoiced separately from the outbound CBIS.

*3 On September 26, 2012, the County awarded a public contract bid—for the outbound luggage system only—to a competitor of Horsley. The accepted bid did not include any contract for work on the inbound system.

### Analysis

The County contends that Five Star has not stated a claim because the Complaint is premised

on the existence of an enforceable agreement between the parties and there is no legal basis for Five Star's asserted interest in the proposed agreement, and that Five Star has not provided essential factual support for its allegation that the County acted arbitrarily and capriciously. Five Star maintains that it has plead a legally cognizable claim, that the County had no discretion after receipt of the qualified low-bid, and that arbitrarily refusing to sign the contract the County submitted to Horsley does not nullify the low-bid requirement.

This case is before the Court on diversity jurisdiction pursuant to 28 U.S.C. § 1332 and, consequently, the Court must apply state substantive law and federal procedural law. *See Kamphuis Pipeline Co. v. Lake George Reg'l Sewer Dist.,* 273 F.3d 732, 735 (7th Cir.2001). Both sides cite Wisconsin substantive law and, in the absence of any dispute, this Court applies Wisconsin law. *Grundstad v. Ritt,* 166 F.3d 867, 870 (7th Cir.1999).

[4][5] In applying Wisconsin law, the Court would generally apply the law of the Wisconsin Supreme Court. *Home Valu, Inc. v. Pep Boys,* 213 F.3d 960, 963 (7th Cir.2000). If the state's highest court has not spoken on an issue, the decision of an intermediate state court controls "unless [the federal court] is convinced by other persuasive data that the highest court of the state would decide otherwise." *City of Chi. v. StubHub!, Inc.,* 624 F.3d 363, 365 (7th Cir.2010) (quoting *West v. AT & T,* 311 U.S. 223, 237, 61 S.Ct. 179, 85 L.Ed. 139 (1940)). Moreover, if the Court is "faced with two opposing and equally plausible interpretations of state law, '[it] generally [should] choose the narrower interpretation which restricts liability, rather than the more expansive interpretation which creates substantially more liability.' " *Home Valu,* 213 F.3d at 963 (alterations added) (citations omitted).

[6] *L.G. Arnold, Inc. v. City of Hudson,* 215 Wis. 5, 9, 254 N.W. 108, 110 (Wis.1934), held that the city's acceptance of plaintiff's bid to build pavement and a curb for a causeway constituted a con-

tract, although it was understood that a formal contract was to be executed. *Id.* (citing *Garfield v. United States,* 93 U.S. 242, 23 L.Ed. 779 (1876); *Harvey v. United States,* 105 U.S. (15 Otto) 671, 26 L.Ed. 1206 (1881); *United States v. Purcell Envelope Co.,* 249 U.S. 313, 39 S.Ct. 300, 63 L.Ed. 620 (1919)). *L.G. Arnold* held that the bidder's request for additional compensation because the city's modification of the source of the sand and gravel for the work resulted in increased cost for the bidder was not part of the contract. *Id.* at 109–10. Referring to the applicable statute, the court held that, in taking no action with respect to approving the contents of the bidder's letter, the city incurred no liability. *Id.* at 110. Subsequently, the Wisconsin Supreme Court held that a city cannot be compelled to award a contract to the lowest bidder. *Aqua–Tech, Inc. v. Como Lake Prot. & Rehab. Dist.,* 71 Wis.2d 541, 549–50, 239 N.W.2d 25, 29–30 (Wis.1976).

**\*4** While the County also relies upon Milwaukee County Ordinance Section 44.08 [FN2] as allowing it to withdraw the bid entirely, Five Star contends that Wisconsin state law requires that all public works contracts be awarded to the lowest responsible bidder. (Pl.'s Mem. Opp'n Mot. Dismiss, 4 (citing Wis. Stats. §§ 59.52(6)(d)(1), 29(a), 66.0910(1)(a), (1m)(a)(1, 2).) (ECF No. 49.) Five Star further contends that the County is a creation of the state, a political subdivision for purposes of public works contracts, and is subject to all the statutory requirements contained therein. *Id.* (citing Wis. Stats. §§ 59.01, 59.03, 66.901(1)(bm).) Therefore, Five Star maintains that the County has failed to comply with Wisconsin statutes, which is an unauthorized and *ultra vires* act entitling Five Star to the relief requested in the Complaint.

Section 59.52(29)(a) of the Wisconsin Statutes describes the process by which contracts for public work are to be created and states, in relevant part:

All public work, including any contract for the construction, repair, remodeling or improvement of any public work, building, or furnishing of

supplies or material of any kind where the estimated cost of such work will exceed $25,000 will be let by contract to the lowest responsible bidder.... A contract, the estimated cost of which exceeds $25,000, shall be let and entered into under s. 66.0901, except that the board may by a three-fourths vote of all the members entitled to a seat provide that any class of public work or any part thereof may be done directly by the county without submitting the same for bids.

Section 59.52(29)(a), referred to as a public bidding statute, has been construed by Wisconsin courts on several occasions. [FN3] In *Aqua–Tech, Inc.,* 239 N.W.2d at 30, the Wisconsin Supreme Court explained that "[s]tatutory bidding requirements are designed to prevent fraud, collusion, favoritism and improvidence in the administration of public business, as well as to insure that the public receives the best work or supplies at the most reasonable price practicable." The court also stated that "bid statutes are intended primarily for the benefit and protection of the public, and the individual bidder has no fixed, absolute right to the contract." *Id.* at 31. Indeed, a public bidding authority cannot be compelled to award the contract to the lowest bidder. *N. Twin Builders, LLC v. Town of Phelps,* 334 Wis.2d 148, 154, 800 N.W.2d 1, 4 (Wis.Ct.App.2011). *See also, State ex rel. People's Land & Mfg. Co. v. Holt,* 132 Wis. 131, 111 N.W. 1106, 1107 (Wis.1907).

[7][8] A reviewing court will only interfere with the bidding authority's discretionary act if it is arbitrary or unreasonable. *PRN Assocs. LLC v. State of Wis. Dep't of Admin.,* 313 Wis.2d 263, 268, 756 N.W.2d 580, 582 (Wis.Ct.App.2008). *D.M.K. v. Town of Pittsfield,* 290 Wis.2d 474, 482, 711 N.W.2d 672, 676 (Wis.Ct.App.2006), holds that public entities have discretion in awarding the contract to the lowest bidder. In D.M.K., the court of appeals upheld the town's determination that the low bidder was not a responsible bidder. *Id.* at 483, 711 N.W.2d 672. Despite construing the facts of the Complaint and the reasonable inferences from those

facts in the light most favorable to Five Star, the Complaint does not contain plausible claim indicating that the County's withdrawal of the bid was arbitrary or unreasonable.

**\*5** As this Court noted in its preliminary injunction decision, Horsley knew of the bid protest by Diversified. However, the County had no obligation to disclose its internal deliberations to Horsley. The County rebid the baggage system project differently by seeking bids for both outbound and inbound luggage systems. The County also obtained a lower bid on the outbound component than that originally made by Horsley, and contracted for that work. The primary purpose of the bidding system is to protect the public. *Aqua–Tech, Inc.,* 239 N.W.2d at 31. The decision to rebid the contract resulted in ultimate savings to the County. Five Star must plead some facts that suggest a right to relief that is beyond the "speculative level." *Atkins,* 631 F.3d at 832. Five Star has failed to do so. Therefore, the County's motion to dismiss is granted. In light of the foregoing, the Court also dismisses Five Star's motion for reconsideration.

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT:**

The County's motion to dismiss (ECF No. 46) is **GRANTED;**

This action is **DISMISSED;**

Five Star's motion for relief from order denying preliminary injunction (ECF No. 35) is **DISMISSED;** and

The Clerk of Court is **DIRECTED TO ENTER** judgment accordingly.

FN1. The parties' submissions do not disclose what is represented by the acronym "DBE."

FN2. Section 44.08 of the Milwaukee County Ordinances provides:

Bids received after the time set for closing and bids of contractors not qualified by the appropriate director of transportation (or designee) or the director of administrative services (or designee) shall be returned unopened to bidders. Bids which fail to conform to signature, affidavit and bond requirements, shall be rejected by the director and returned to the bidder. If a bidder awarded a contract fails to return the signed contract and executed performance bond within ten (10) days from receipt thereof or within such additional time for which there exists an excusable delay approved by the director, the bid bond and/or deposit shall be forfeited as liquidated damages. Upon such forfeiture, the contract may be awarded by the director to the next lowest, responsible, responsive bidder or readvertised and/or relet to public bid or cancelled if the next lowest responsive, responsible bidder is not within the project budget. The director is authorized to reject all bids, or cancel the entire bid, after consultation with corporation counsel has determined that such action is in the best interest of the county. The rejected bidder may appeal the decision in accordance with chapter 110 of the Code. **The county, through its appropriate director of transportation (or designee) or the director of administrative services (or designee), reserves the right to accept or reject all bids, or cancel the entire bid, in its best interest.**

(Emphasis added.)

FN3. Both parties have cited decisions from other jurisdictions addressing other public bidding statutes, which the Court reviewed. However, this Court's role in applying Wisconsin law is to interpret the

--- F.Supp.2d ----, 2013 WL 1949606 (E.D.Wis.)
**(Cite as: 2013 WL 1949606 (E.D.Wis.))**

      law as would the Wisconsin courts. The parties have not provided sufficient basis for this Court to conclude that Wisconsin's highest court or its appellate courts would follow those decisions.

E.D.Wis.,2013.

Five Star Airport Alliance, Inc. v. Milwaukee County

--- F.Supp.2d ----, 2013 WL 1949606 (E.D.Wis.)

END OF DOCUMENT



Slip Copy, 2013 WL 4718333 (W.D.Wis.)
**(Cite as: 2013 WL 4718333 (W.D.Wis.))**

Only the Westlaw citation is currently available.

United States District Court,
W.D. Wisconsin.
Caroline MORE, Plaintiff,
v.
Bishop William P. CALLAHAN, O.F.M., Archbishop Jerome E. Listecki, Monsignor Michael J. Gorman, Edward Jones and William Moore, Defendants.

No. 12–cv–905–bbc.
Sept. 3, 2013.

Caroline More, Lacrescent, MN, pro se.

James George Birnbaum, Jessica Taylor Kirchner, Birnbaum, Seymour, Kirchner & Birnbaum, LLP, La Crosse, WI, for Defendants.

OPINION AND ORDER

BARBARA B. CRABB, District Judge.

**\*1** This is a civil action for monetary relief in which plaintiff Caroline More, who is proceeding pro se, is suing defendants for injuries related to sexual assault, libel and slander. She alleges that defendant William Moore sexually assaulted her when she was visiting a Catholic church in La Crosse, Wisconsin and that defendant Edward Jones defamed her by making a false statement to the police. Defendants have responded to plaintiff's complaint by filing motions to dismiss for failure to state a claim upon which relief can be granted. Defendants Callahan, Gorman and Jones contend that plaintiff has failed to allege facts from which it can be inferred that Callahan and Gorman are vicariously liable for the acts of Moore and Jones; or that Jones committed a defamatory act. Dkt. # 7. Defendant Listecki contends that plaintiff has not set forth any facts suggesting that he can be joined in the action. Dkt. # 10.

Having accepted as true all well-pleaded facts in plaintiff's complaint and drawing all inferences in plaintiff's favor, I find that she has stated plausible claims for relief with respect to defendants Callahan, Gorman, Jones and Listecki. Therefore, I am denying both motions to dismiss.

On a separate matter, I note that as a basis for federal jurisdiction plaintiff relies on 28 U.S.C. § 1332, which requires a showing that plaintiff is not a citizen of the same state as any of the defendants and that the amount in controversy is greater than $75,000. Although plaintiff alleges the *residency* of herself and the defendants, she has not identified her own or defendants' *citizenship*. It is the citizenship, not the residency of an individual person that matters for purposes of diversity jurisdiction. *Heinen v. Northrop Grumman Corp.,* 671 F.3d 669, 670 (7th Cir.2012). An individual is a citizen of the state in which he is domiciled, that is, where he has a "permanent home and principal establishment, and to which he has the intention of returning whenever he is absent therefrom." *Dakuras v. Edwards,* 312 F.3d256, 258 (7th Cir.2002). As the proponent of federal jurisdiction, it is plaintiff's burden to show that the parties are citizens of different states. *Smart v. Local 702 International Brother of Electrical Workers,* 562 F.3d 798, 802–03 (7th Cir.2009). Accordingly, plaintiff may have until September 30, 2013, in which to file an amended complaint alleging diversity of citizenship between herself and each of the defendants.

Plaintiff fairly alleges the following facts in her complaint.

ALLEGATIONS OF FACT

A. *The Parties*

Plaintiff Caroline More is a resident of Minnesota and a lifelong Catholic. During 2010, she practiced her religion on a daily basis at the St. Joseph the Workman Cathedral in La Crosse, Wisconsin.

Defendant William Moore is employed by the

cathedral as a janitor and performs duties during weekdays to maintain the facility. Defendant Edward Jones has been employed as the secretary for the cathedral for the past three years. His office is in the rectory, adjacent to the cathedral. Defendant Monsignor Michael Gorman is the former pastor of the cathedral and was responsible for "the interests and activity of this religious entity" during the events in question. Since then he has been named the vicar general of the Diocese of La Crosse. Defendant William P. Callahan, Order of Friars Minor Conventional, is the bishop of La Crosse and has held the title since approximately November 2010. He "governs" the cathedral because it is the "Bishop's church" where "his seat" is located.

**\*2** Defendant Archbishop Jerome E. Listecki is the ordinary (or leader) for the Archdiocese of Milwaukee and "oversees all four dioceses in Wisconsin in various capacities as 'the Metropolitan' or 'the Province' that is further governed by the Apostolic Nuncio in Washington, D.C. and authorities in Vatican City." Listecki is a former bishop of La Crosse.

### B. *The Sexual Assault*
At about 2:00 p.m. on Thursday, December 8, 2010, plaintiff entered the St. Joseph Cathedral and encountered defendant Moore, who was mopping floors. Plaintiff had a brief conversation with Moore and inquired about evening mass. Moore then allowed plaintiff to use his cell phone because she had forgotten hers. In order to maintain silence in the church, plaintiff went to a reception area and made one or two phone calls.

Upon completing her phone calls, plaintiff left her travel case in the reception room and walked back to the section of the cathedral where Moore was mopping floors. Moore raised his hand to take hold of the arm of the plaintiff's coat and began to walk her toward the altar. Plaintiff was unaware of why Moore was holding her sleeve or where they were walking.

Moore guided plaintiff into a hallway, turned to face her and touched her chin. He then moved his hands to grasp them in a locking clasp. (It is unclear from the complaint where Moore positioned plaintiff's hands. Plaintiff alleges that Moore held them behind her back, using his hands to form a fist behind her shoulders as he hugged her. However, plaintiff also alleges that her "arms were extended over Moore's shoulders but were not touching him.") Moore moved his hands to the center of plaintiff's back and relocated his grasp to her lower back. He then pressed his erect penis against plaintiff's torso for about 30 or 40 seconds. Plaintiff turned her face to the right and saw that Moore was holding his mouth partially open in a rounded position as though he were going to kiss her.

Plaintiff broke free from Moore's grasp by arching her back and using her hands to brace herself against his arms. She stood frozen in a state of trauma and shock and was physically dizzy. Plaintiff asked Moore, "Aren't you on a camera?" Moore laughed and said, "Not here." Plaintiff walked briskly to the reception room to retrieve her bag and left the building immediately, using the closest door.

### C. *The Police Report*
On February 17, 2011, plaintiff filed a criminal complaint with the La Crosse Police Department. Officer Craig Teff interviewed her that afternoon. He later visited the cathedral and spoke with defendants Moore and Jones. At some point, Jones told the police that plaintiff had been seen topless at the Shrine of Our Lady of Guadalupe about five miles south of La Crosse. Although this was untrue, it caused the police department to drop the investigation and Officer Teff to write in his report that "all parties involved were advised to be cautious when dealing with Caroline."

**\*3** Sometime between November 10 and December 10, 2012, the La Crosse Police Department called to inform plaintiff that it was re-opening the criminal case because it had learned that Moore had a prior second-degree sexual assault conviction that had not been disclosed to it by

Moore or the church.

OPINION

To avoid dismissal for failure to state a claim, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a). It is not necessary for plaintiff to plead specific facts but plaintiff must give defendants fair notice of the claims against them and the grounds supporting her claims. *Stanard v. Nygren,* 658 F.3d 792, 797 (7th Cir.2011) (citations omitted). In addition, she must plead enough allegations of fact to make a claim for relief plausible on its face. *Aschcroft v. Iqbal,* 556 U.S. 662, 678–79 (2009) (citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* However, even in the wake of *Iqbal* and *Bell,* the pleading standards for pro se plaintiffs are considerably relaxed. *Luevano v. Wal–Mart Stores, Inc.,* —— F.3d ——, 2013 WL 3599156, \* 10 (7th Cir. Jul. 16, 2013) (citing *Erickson v. Pardus,* 551 U.S. 89, 94 (2007)). Pro se complaints are construed liberally and held to less stringent standard than formal pleadings drafted by lawyers. *Arnett v. Webster,* 658 F.3d 742, 751 (7th Cir.2011). Plaintiff need only "give enough details about the subject-matter of the case to present a story that holds together." *Swanson v. Citibank, N.A.,* 614 F.3d 400, 404 (7th Cir.2010).

### A. *Motion of Defendants Callahan, Gorman and Jones: Defamation*

Plaintiff alleges that defendant Jones's false statement "influenced the police department because the investigation was not only pursued no further (at the time) ... [sic] but there is a final sentence drafted by Officer Teff" advising others to be cautious when dealing with her. Plt.'s Cpt., dkt. # 2, at ¶ 22. She then alleges that "This public comment damaged the Plaintiff's reputation, was unwarranted, and could only be a direct result from illicit ideas supplanted and offered by Defendant Jones."

*Id.* Defendants argue that plaintiff has failed to state a claim against Jones because 1) plaintiff alleges that it was Officer Teff's comment, and not Jones's comment, that damaged her reputation; and 2) plaintiff does not allege that Jones knowingly made a false statement to Officer Teff or made his statement with malice.

Defendants' first argument is unpersuasive. A fair reading of plaintiff's allegations is that she is claiming that Jones's allegedly false statement damaged her reputation, specifically with the police department, which decided not to investigate her complaint of sexual assault. It is reasonable to infer that plaintiff recounted Officer Teff's statement in an effort to show how Jones's statement influenced the police investigation.

**\*4** In support of their second argument, defendants point to Wisconsin's rule with respect to statements made to law enforcement officers. Under that rule, any such statements "fall within the ambit of conditionally privileged statements, provided, however, that the damaging remarks are made in good faith without malice." *Bergman v. Hupy,* 64 Wis.2d 747, 751, 221 N.W.2d 898 (1974) (quoting *Lisowski v. Chenenoff,* 37 Wis.2d 610, 627, 628, 155 N.W.2d 619, 628 (1968)). Although defendants are correct, their argument constitutes a defense to plaintiff's claim of defamation. Because the privilege that defendants claim is conditional, her claim remains viable if she is able to prove on summary judgment or at trial that Jones acted in bad faith or with malice.

Under Wisconsin law, the elements of defamation include the following: (1) a false statement; (2) communicated by speech, conduct or in writing to a person other than the person defamed; and (3) that is unprivileged and tends to harm one's reputation so as to lower him or her in the estimation of the community or to deter third persons from associating or dealing with him or her. *In re Storms v. Action Wisconsin Inc.,* 2008 WI 56, ¶ 37, 309 Wis.2d 704, 750 N.W.2d 739. Plaintiff has provided defendant Jones sufficient notice of the claim against

him by identifying the defamatory words, the surrounding circumstances and the harm she suffered. Although she did not allege specifically that Jones acted in bad faith, it is possible to infer this from the circumstances described in the complaint. For example, plaintiff accuses Jones of offering "illicit ideas," which indicates that plaintiff believes that Jones was trying to harm her. Defendants have failed to cite any support for their assertion that plaintiff must allege malice or bad faith with greater particularity. As a result, their motion to dismiss the defamation claim is denied.

### B. *Motions of Defendants Callhan, Gorman, Jones and Listecki: Vicarious Liability*

Although defendant Listecki his own motion, independently of defendants Callahan and Gorman, they all contend that plaintiff identifies them only by their religious leadership roles within the church and does not specify what claims or legal theories she is asserting against them. They argue that even assuming that defendant Moore assaulted plaintiff and defendant Jones defamed her, those intentional torts do not establish personal liability on the part of defendants Callahan, Gorman or Listecki. Citing the State of Wisconsin's Department of Financial Institution's website to show that the cathedral is a corporation, defendants contend that an agent of a corporation is not personally liable for torts of the corporation or its agents merely because he holds corporate office. 3A W. Fletcher, *Cyclopedia of the Law of Private Corporations* § 1137 (1975). I have not considered this last argument because it raises matters outside the pleadings. *Albany Bank & Trust Co. v. Exxon Mobil Corp.,* 310 F.3d 969, 971 (7th Cir.2002) (party may not raise matters outside pleadings on Rule 12(b)(6) motion unless court converts motion to one for summary judgment).

**\*5** Although a person is generally liable only for his or her own torts, the law will apply vicarious liability under certain circumstances. *Kerl v. Dennis Rasmussen, Inc.,* 2004 WI 86, ¶ 17, 273 Wis.2d 106, 682 N.W.2d 328; *Lewis v. Physicians Insurance Company of Wisconsin,* 2001 WI 60, ¶ 11, 243

Wis.2d 648, 627 N.W .2d 484. For example, the doctrine of respondeat superior assigns vicarious liability to an employer for the torts of its employees acting within the scope of their employment. *Javier v. City of Milwaukee,* 670 F.3d 823, 828 (7th Cir.2012) (citing *Kerl,* 273 Wis.2d 106, 682 N.W.2d at 333–37; *Restatement (Third) of Agency* § 7.07 (2006)).

"A prerequisite to vicarious liability under respondeat superior is the existence of a master/servant relationship." *Kerl,* 273 Wis.2d 106, ¶ 18. Although vicarious liability typically arises in the employer-employee relationship, it is not confined to this type of agency. *Id.* at ¶ 22. "A servant need not be under formal contract to perform work for a master, nor is it necessary for a person to be paid in order to occupy the position of servant." *Id.* Further, "multiple factors may be considered in determining whether a master-servant relationship exists," with the right to control being the dominant test. *Petzel v. Valley Orthopedics Ltd.,* 2009 WI App 106, ¶ 16, 320 Wis.2d 621, 770 N.W.2d 787 (citing *Pamperin v. Trinity Memorial Hospital,* 144 Wis.2d 188, 199, 423 N.W.2d 848, 852 (1988)).

In her complaint, plaintiff alleges that defendants Jones and Moore are employed by St. Joseph's Cathedral and that Gorman was responsible for "the interests and activity" of the cathedral; Callahan "governs" the cathedral; and Listecki oversees the diocese in which St. Joseph's is located. She also alleges that Jones may have been speaking on behalf of other church administrators. Plt.'s Cpt., dkt. # 2, at ¶ 18. Given the various factual considerations relevant to the master-servant relationship analysis and the liberal pleading standards for pro se plaintiffs, it reasonable to infer from plaintiff's allegations that defendants Moore and Jones were under the control and supervision of defendants Callahan, Gorman and Listecki.

Defendants Callahan and Gorman make the additional argument that defendant Moore's alleged assault of plaintiff was too attenuated from his employment as a janitor to establish liability under re-

spondeat superior. The Wisconsin Supreme Court has held that "[c]onduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master." *Scott v. Min–Aqua Bats Water Ski Club, Inc.,* 79 Wis.2d 316, 321, 255 N.W.2d 536, 538 (1977). Plaintiff has alleged that Moore sexually assaulted her while performing his duties as a janitor at the cathedral. Although I agree with defendants that it is difficult to imagine how sexual assault could be authorized by his employer or actuated by Moore's purpose to serve his master, those questions necessarily raise matters outside the pleadings and involve an analysis of Moore's purpose and intent, which is best dealt with at summary judgment or trial.

**\*6** Because plaintiff has alleged enough facts to permit the court to infer that Callahan, Gorman and Listecki could be held vicariously liable for the actions or Moore and Jones, their motions to dismiss these claims will be denied.

In her response briefs, plaintiff explains that she is basing her claims against Callahan, Gorman and Listecki at least in part on a theory of negligent hiring and supervision. Dkt. # 25 at 1; dkt. # 26 at 2, 6–7. A claim for negligent hiring or supervision is based on agency principles and is separate from a claim for vicarious liability, which is based in tort. *L.L.N. v. Clauder,* 209 Wis.2d 674, 699 n. 21, 563 N.W.2d 434, 445 n. 21 (1997). To state such a claim, plaintiff must establish that (1) the employer had a duty of care owed to the plaintiff; (2) the employer breached its duty; (3) a wrongful act or omission of an employee was a cause-in-fact of the plaintiff's injury; and (4) an act or omission of the employer was a cause-in-fact of the wrongful act of the employee. *John Doe 1 v. Archdiocese of Milwaukee,* 2007 WI 95, ¶ 16, 303 Wis.2d 34, 50–51, 734 N.W.2d 827, 834 (discussing negligent supervision). "Liability does not result solely because of the relationship of the employer and employee, but instead because of the independent negligence of

the employer." *L.N.N.,* 209 Wis.2d at 699 n. 21 (citing *Restatement (Second) of Agency* § 213 cmt. d). An employer is liable for negligent hiring or supervision only if he knew or should have known that his employee would subject a third party to an unreasonable risk of harm. *Id.*

It is unreasonable to infer from the minimal allegations in plaintiff's complaint that she is attempting to state such a claim. For example, she fails to allege that defendants Callahan, Gorman and Listecki hired Moore and Jones, had responsibility for them and acted negligently in supervising their activities or had reason to know about Moore's past sexual assault conviction. Plaintiff cannot add allegations or claims to a case by asserting them for the first time in a brief filed in opposition to defendants' motion to dismiss. In order to add such claims, she must amend her complaint to add the proper allegations.

ORDER

IT IS ORDERED that

1. The motions to dismiss filed by defendants William Callahan, Michael Gorman and Edward Jones, dkt. # 7, and defendant Jerome Listecki, dkt. # 10, are DENIED; and

2. Plaintiff Caroline More may have until September 30, 2013, in which to file an amended complaint that alleges diversity of citizenship between herself and defendants.

W.D.Wis.,2013.
More v. Callahan
Slip Copy, 2013 WL 4718333 (W.D.Wis.)

END OF DOCUMENT



Not Reported in F.Supp.2d, 2005 WL 1154281 (E.D.Wis.)
**(Cite as: 2005 WL 1154281 (E.D.Wis.))**

C

Only the Westlaw citation is currently available.

United States District Court,
E.D. Wisconsin.
MULLINS' WHEY, INC., Plaintiff,
v.
MCSHARES, INC., et al., Defendants.

No. 04-C-0130.
May 10, 2005.

Jerome E. Smyth, Tony A. Kordus, Green Bay, WI,
for Plaintiff.

David J. Turek, Michael J. Cohen, Milwaukee, WI,
for Defendants.

MEMORANDUM AND ORDER
GRIESBACH, J.

**\*1** This matter is before the court on a motion
for summary judgment concerning an issue of in-
surance coverage. The underlying action is for
breach of contract, and federal jurisdiction arises
under 28 U.S .C. § 1332 based on the diverse cit-
izenship of the parties. On November 19, 2004, the
court granted Intervening Plaintiff Acuity, A Mutu-
al Insurance Company's motion to intervene in this
case for purposes of seeking a declaratory judgment
determining its defense and indemnification duties
to Plaintiff Mullins' Whey, Inc. Acuity has now
moved for summary judgment on both coverage
and defense issues. For the following reasons, Acu-
ity's motion for summary judgment will be denied.

FACTS

Mullins is in the business of selling whey pro-
tein concentrate and whey protein isolate.
(Countercl.¶ 6.) Between December 2002 and Feb-
ruary 2003, Mullins sold whey protein concentrate
to Defendant and Counterclaimant Next Proteins,
Inc. (Countercl.¶ 8.) Next incorporated some of this
concentrate into its own food product. Next alleges
that it subsequently discovered that the concentrate

contained benzene and other chemicals that
rendered it unfit for human consumption.
(Countercl.¶ 18.) Next's product allegedly "was
ruined and unusable as a result of the contaminated
Mullins whey protein concentrate. Next Proteins
did not release that finished product to the public."
(Countercl.¶ 10.) Instead, Next demanded reim-
bursement of the purchase price of the concentrate
and additional expenses associated with its contam-
inated product from Mullins. (Countercl.¶¶ 11-12.)
When Mullins refused, Next filed a counterclaim
for breach of contract and breach of express and
implied warranties. Next alleges that its damages
total over $150,000, not including the cost of repla-
cing Mullins' product. (Countercl.¶ 14.) The
$150,000 figure allegedly includes
$100,000-140,000 in reimbursement sought for the
cost of the defective concentrate.[FN1] (*Id.*)

> FN1. It appears that the actual amount of
> reimbursement sought may be less than the
> $100,000-140,000 alleged in the counter-
> claim. (Pohle Decl. ¶ 21.) Mullins con-
> cedes that the CGL provides no coverage
> for the cost of the defective concentrate.
> (Resp. at 16.)

Mullins tendered defense of Next's counter-
claim to its comprehensive general liability (CGL)
insurer, Acuity. Acuity agreed to defend Mullins
but reserved the right to contest coverage, which it
then did by intervening in this action. Acuity now
argues that it has neither a duty to defend Mullins
against Next's counterclaim nor a duty to indemnify
Mullins for any liability to Next.

ANALYSIS

Summary judgment is proper when the plead-
ings, depositions, answers to interrogatories, and
admissions on file, together with the affidavits, if
any, show that there is no genuine issue as to any
material fact and that the moving party is entitled to
judgment as a matter of law. *Wantz v. Experian In-
formation Sys.,* 386 F.3d 829, 832 (7th Cir.2004);

Not Reported in F.Supp.2d, 2005 WL 1154281 (E.D.Wis.)
**(Cite as: 2005 WL 1154281 (E.D.Wis.))**

Fed.R.Civ.P. 56. Summary judgment can be particularly appropriate in contract actions where the disposition of the case involves the interpretation of a contract. *Tingstol Co. v. Rainbow Sales Inc.,* 218 F.3d 770, 771-72 (7th Cir.2000).

Under Wisconsin law,[FN2] the construction of a contract is a question of law. *Elkhart Lake's Road Amer. v. Chicago Hist. Races,* 158 F.3d 970, 972 (7th Cir.1998). Insurance policies are contracts and the court's duty in interpreting an insurance policy, as it is in interpreting any contract, is to determine and give effect to the intent of the contracting parties. *Wisconsin Label Corp. v. Northbrook Property & Cas. Ins. Co.,* 233 Wis.2d 314, 607 N.W.2d 276, 282 (Wis.2000). Where the terms of a contract are clear and unambiguous, the court must interpret it according to its literal terms. *Gorton v. Hostak, Henzl & Bichler, S.C.,* 217 Wis.2d 493, 577 N.W.2d 617, 622-23 (Wis.1998). But when the terms of the contract are reasonably susceptible to more than one construction, the contract is ambiguous and the court attempts to ascertain the intent of the parties. *Id.* Insurance polices are construed as they would be understood by a reasonable person in the position of the insured. *Kremers-Urban Co. v. American Employers Ins. Co.,* 119 Wis.2d 722, 351 N.W.2d 156, 163 (Wis.1984). However, policies of insurance should not be interpreted to provide coverage for risks that the insurer did not contemplate or underwrite and for which it has not received a premium. *Wisconsin Label,* 607 N.W.2d at 283.

> FN2. The parties' briefs do not explicitly address what law is applicable to interpretation, but assume that Wisconsin law applies.

**\*2** Wisconsin courts follow a three-step procedure in determining whether coverage exists under a particular policy:

> First, we examine the facts of the insured's claim to determine whether the policy's insuring agreement makes an initial grant of coverage. If it is clear that the policy was not intended to cover the claim asserted, the analysis ends there. If the claim triggers the initial grant of coverage in the insuring agreement, we next examine the various exclusions to see whether any of them preclude coverage of the present claim. Exclusions are narrowly or strictly construed against the insurer if their effect is uncertain ..... We analyze each exclusion separately; the inapplicability of one exclusion will not reinstate coverage where another exclusion has precluded it. Exclusions sometimes have exceptions; if a particular exclusion applies, we then look to see whether any exception to that exclusion reinstates coverage. An exception pertains only to the exclusion clause within which it appears; the applicability of an exception will not create coverage if the insuring agreement precludes it or if a separate exclusion applies.

*American Family Mut. Ins. Co. v. American Girl, Inc.,* 268 Wis.2d 16, 673 N.W.2d 65, 73 (Wis.2004) (citations omitted).

CGL policies like the one at issue in this case impose two duties on the insurer: the duty to defend its insured and the duty to indemnify its insured against covered losses. *Red Arrow Products Co. v. Employers Ins. of Wausau,* 233 Wis.2d 114, 607 N.W.2d 294 (Wis.Ct.App.2000). The duty to defend is broader than the duty to indemnify because the duty to defend is triggered by arguable, as opposed to actual, coverage. *Newhouse v. Citizens Sec. Mut. Ins. Co.,* 176 Wis.2d 824, 501 N.W.2d 1, 5 (Wis.1993). In Wisconsin, "an insurer has a duty to defend a suit where the complaint alleges facts which, if proven at trial, would give rise to the insurer's liability under the terms of the policy." *Doyle v. Engelke,* 219 Wis.2d 277, 283, 580 N.W.2d 245 (1998). Whether an insurer has a duty to defend is properly determined at the outset of litigation. By contrast, "[t]he duty to indemnify is not ripe for adjudication until the insured is in fact held liable in the underlying suits." *Nationwide Ins. Co. v. Zavalis,* 52 F.3d 689, 693 (7th Cir.1995).

The CGL policy at issue obligates Acuity to "pay those sums that [Mullins] becomes legally ob-

ligated to pay because of bodily injury or property damage" to which it applies. (Shull Decl. ¶ 5, Ex. 1 at 1.) The policy applies only if "the bodily injury or property damage is caused by an occurrence that takes place in the coverage territory." (*Id.*) The policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (*Id.* at 12.)

Acuity first argues that its policy provides no coverage because a contract claim is not an "occurrence" as defined in the policy. Next's contract claims against Mullins are not, of course, an occurrence, and Mullins makes no such argument. Rather, Mullins argues that an occurrence caused property damage to Next's property. Acuity's contention, put more accurately, is that CGL policies such as the one in this case cover only tort claims, and exclude coverage of contract claims. The Wisconsin Supreme Court rejected this argument in a case involving virtually identical language in a CGL policy:

**\*3** The CGL policy's basic coverage language does not distinguish between losses actionable in tort and losses actionable under contract.... [T]he definition of occurrence in the CGL policy does not refer to the legal category of the claim; there is no language limiting the term to those occurrences that are actionable only in tort.

*American Family Mut. Ins. Co. v. American Girl, Inc.,* 673 N.W.2d at 77 n. 6. Accordingly, nothing in the policy's definition of "occurrence" excludes coverage of Next's claims.

Acuity next argues that the "impaired property exclusion" in the CGL policy excludes coverage of Next's claims. The CGL policy excludes coverage for:

Property damage to impaired property or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous

condition in your product or your work; or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

(Ex. 1 at 4.) The policy defines "impaired property" as

tangible property, other than your product or your work, that cannot be used or is less useful because:

a. It incorporates your product or your work that is known or thought to be defective, deficient, inadequate, or dangerous; or

b. You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

a. The repair, replacement, adjustment, or removal of your product or your work; or

b. Your fulfilling the terms of the contract or agreement.

(Ex. 1 at 11.) The complaint plainly alleges that Next's tangible property could not be used because it incorporated Mullins' defective product. Nothing in the complaint (or, for that matter, anywhere else in the record) suggests that Next's property could be restored to use by "the repair, replacement, adjustment, or removal of [Mullins' product] or [Mullins'] fulfilling the terms of the contract or agreement." To the contrary, Next's property "was ruined and unusable as a result of the contaminated Mullins whey protein concentrate." (Countercl.¶ 10.) Next's property is therefore not impaired property, and the exclusion is inapplicable.

Acuity next argues that the "recall of products exclusion" excludes coverage for all of Next's claims. The CGL policy provides no coverage for:

Damages claimed for any loss, costs, or expense incurred by you or others for the loss of use,

withdrawal, recall, inspection, repair, replace-
ment, adjustment, removal or disposal of:

(1) Your product;

(2) Your work;

(3) Impaired property;

if such product, work or property is withdrawn or
recalled from the market or from use by any per-
son or organization because of a known or sus-
pected defect, deficiency, inadequacy, or danger-
ous condition in it.

(Ex. 1 at 4.) Acuity contends that Mullins' con-
centrate underwent a withdrawal or recall when
Next withdrew food product incorporating Mullins'
product from the market. However, Next is claim-
ing damages for the removal and disposal of its
product, not Mullins'. And as discussed above,
Next's property is not "impaired property." Insofar
as Acuity contends that Next's product, which in-
corporates Mullins' product, is "[Mullins'] product"
or "[Mullins'] work," its proposed interpretation
would render the reference to impaired property su-
perfluous, since a recall of any property incorporat-
ing Mullins' product would trigger the exclusion,
whether or not the property was impaired property.
"Interpretations which render insurance contract
language superfluous are to be avoided where a
construction can be given which lends meaning to
the phrase." *Bulen v. West Bend Mutual Ins. Co.,*
125 Wis.2d 259, 371 N.W.2d 392, 394
(Wis.Ct.App.1985). Moreover, nothing in the
policy's definitions of "your product" or "your
work" indicates that the terms were meant to in-
clude the products of others when they incorporate
Mullins' product. FN3 Accordingly, the court con-
cludes that the exclusion does not apply.

FN3. The policy defines "your product" to
mean:

a. Any goods or products other than real
property, manufactured, sold, handled,
distributed or disposed of by:

(1) You;

(2) Others trading under your name; or

(3) A person or organization whose busi-
ness or assets you have acquired; and

b. Containers (other than vehicles), ma-
terials, parts or equipment furnished in
connection with such goods or products.

Your product includes:

a. Warranties or representation made at
any times with respect to the fitness,
quality, durability, performance or use of
your product, and

b. The providing or failure to provide
warnings or instructions.

Your product does not include vending
machines or other property rented to or
located for the use of others but not sold.

(Ex. 1 at 13.) The policy defines "your
work" to mean:

a. Work or operations performed by you
or on your behalf; and

b. Materials, parts or equipment fur-
nished in connection with such work or
operations.

Your work includes:

a. Warranties or representation made at
any times with respect to the fitness,
quality, durability, performance or use of
your work, and

b. The providing or failure to provide
warnings or instructions.

(Ex. 1 at 14.)

*4 Acuity also argues that its "contractual liab-
ility exclusion" excludes coverage here. The CGL

policy provides no coverage for "Bodily Injury or Property Damage for which [Mullins] is obligated to pay damages by reasons of the assumption of liability in a contract or agreement." (Ex. 1 at 2.) The Wisconsin Supreme Court, construing an identical provision, concluded that "the contractually-assumed liability exclusion applies where the insured has contractually assumed the liability of a third party, as in an indemnification or hold harmless agreement; it does not operate to exclude coverage for any and all liabilities to which the insured is exposed under the terms of the contracts it makes generally." *American Family,* 673 N.W.2d at 81. Next's claims do not arise from an indemnification or hold harmless agreement, and the exclusion is therefore inapplicable.

CONCLUSION

For the foregoing reasons, the court cannot conclude that Acuity does not have a duty to defend Mullins or that it will not have a duty to indemnify Mullins for at least some of the damages in Next's claims.[FN4] Acuity's motion for summary judgment will therefore be DENIED.

> FN4. Final adjudication of Acuity's duty to indemnify is premature at this stage.

The court did not find it necessary to consider the arguments raised in Mullins' proposed sur-reply brief in ruling on Acuity's motion. Mullins' motion for leave to file a sur-reply will therefore be DENIED.

SO ORDERED.

E.D.Wis.,2005.
Mullins' Whey, Inc. v. McShares, Inc.
Not Reported in F.Supp.2d, 2005 WL 1154281 (E.D.Wis.)

END OF DOCUMENT


44 Fed.Appx. 545, 2002 WL 1774064 (C.A.3 (Pa.))
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 44 Fed.Appx. 545, 2002 WL 1774064 (C.A.3 (Pa.)))**

**H**

This case was not selected for publication in the Federal Reporter.

Not for Publication in West's Federal Reporter See Fed. Rule of Appellate Procedure 32.1 generally governing citation of judicial decisions issued on or after Jan. 1, 2007. See also Third Circuit LAR, App. I, IOP 5.7. (Find CTA3 App. I, IOP 5.7)

United States Court of Appeals, Third Circuit.
Paul M. PRUSKY, as trustee of the Windsor Securities, Inc. Profit Sharing Trust, Appellant,
v.
PRUDENTIAL INSURANCE COMPANY OF AMERICA.

No. 02-1004.
Submitted July 16, 2002.
Filed Aug. 1, 2002.

The United States District Court for the Eastern District of Pennsylvania, Berle M. Schiller, J., entered judgment in favor of insurer in investor's breach of contract action, and investor appealed. The Court of Appeals, Fuentes, Circuit Judge, held that investor waived his right to introduce on appeal theory not raised in district court.

Affirmed.

West Headnotes

**Federal Courts 170B ⟺614**

170B Federal Courts
   170BVIII Courts of Appeals
      170BVIII(D) Presentation and Reservation in Lower Court of Grounds of Review
         170BVIII(D)1 Issues and Questions in Lower Court
            170Bk614 k. Nature and Theory of Cause. Most Cited Cases

Plaintiff waived his right to introduce on appeal theory not raised in district court where plaintiff had ample opportunity prior to final judgment to present to the district court the theory he raised on appeal, and where there were no compelling circumstances justifying an exception to the general waiver rule.

**\*545** On Appeal from the United States District Court for the Eastern District of Pennsylvania. District Court Judge: **\*546** Berle M. Schiller. (Civil Action No. 00-cv-02783).

Before SCIRICA, ALITO, and FUENTES, Circuit Judges.

OPINION OF THE COURT
FUENTES, Circuit Judge.

**\*\*1** This case involves a contract dispute between Paul M. Prusky ("Prusky") and the Prudential Insurance Company ("Prudential") over a life insurance policy that allowed Prusky to invest portions of his insurance premiums into certain sub-accounts in an investment fund. During a bench trial before the District Court, Prusky alleged that Prudential breached their contract by unilaterally changing the cut-off time for transferring funds to the sub-accounts from 4:15 p.m. to 4:00 p.m. The District Court entered judgment in favor of Prudential, finding that the cut-off time for making transfers is not a term of the contract. Prusky now appeals, contending that transfer notices take effect under the contract on the date Prudential receives them, regardless of their time of receipt.

Because we find that Prusky waived the right to present the argument he now offers on appeal, we will affirm the Judgment of the District Court.

I.

We write for the parties only and thus state the facts in summary. Prusky, as trustee of the Windsor Securities, Inc. Profit Sharing Trust, owns a life insurance contract (the "Contract") issued by Prudential. Under the terms of the Contract, Prusky can in-

44 Fed.Appx. 545, 2002 WL 1774064 (C.A.3 (Pa.))
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 44 Fed.Appx. 545, 2002 WL 1774064 (C.A.3 (Pa.)))**

vest portions of his insurance premiums into various "sub-accounts." Prudential then invests each sub-account in a specific portfolio of the Prudential Series Fund (the "Series Fund"), a separate entity. According to Prudential, the Contract allows Prusky to transfer funds between the different sub-accounts on every business day, provided the transfer is reported to Prudential before a certain transfer cut-off time. On appeal, Prusky alleges that there is no transfer cut-off time. Prusky's investments in the sub-accounts are evaluated each day at the Series Fund's valuation time.

The parties agree that, when the Contract was purchased, the parties understood that the transfer cut-off deadline and valuation time for the Series Fund were 4:15 p.m. New York City time. Ap. at 2a. However, on June 16, 2000, the board of directors of the Series Fund adopted a resolution that changed the Series Fund's valuation time to the close of the regular trading session of the New York Stock Exchange ("NYSE"), which is generally 4:00 p.m. On that same day, Prudential moved the transfer cut-off deadline to the Series Fund's valuation time.

Prusky filed his original complaint in June 2000 and his amended complaint in November 2000. His amended complaint claimed that the Contract guaranteed Prusky the right to a 4:15 p.m. transfer cut-off time and that Prudential had breached the Contract by changing the cut-off time to 4:00 p.m. Prusky sought injunctive and declaratory relief forcing Prudential to honor the 4:15 p.m. cut-off time for transfers between the sub-accounts. Following a bench trial on the merits, the District Court found that Prudential had not breached the contract and entered judgment in its favor on October 30, 2001. In reaching its decision, the court concluded that the cut-off time for making transfers among the sub-accounts is not a term of the Contract. Ap. at 46a.

**\*\*2** In November 2001, Prusky filed a motion to amend the District Court's findings of fact, conclusions of law, and judgment. **\*547** In his motion,

Prusky contended for the first time that the Contract "mandates that a transfer will be effected at any time on the date received and not on a subsequent date." Ap. at 365a (emphasis in original). The District Court denied Prusky's reconsideration motion on December 3, 2001. Prusky now appeals from the final judgment entered on October 30, 2001, and from the order denying his motion for amendment of the court's findings of fact, conclusions of law, and judgment.

### II.

The District Court exercised jurisdiction over this matter based upon the diversity of the parties. *See* 28 U.S.C. § 1332(a)(1). We have appellate jurisdiction pursuant to 28 U.S.C. § 1291. We review a district court's findings of fact for clear error, *Scully v. U.S. WATS, Inc.,* 238 F.3d 497, 505 (3d Cir.2001), and its conclusions of law *de novo*, *Henglein v. Colt Industries Operating Corp.*, 260 F.3d 201, 208 (3d Cir.2001).

### III.

On appeal, Prusky contends that the District Court erred in concluding that the Contract does not provide a deadline for effecting transfers. He claims that the plain language of the Contract provides that transfer notices take effect on the date Prudential receives them, regardless of the time of their receipt. Prudential responds that, because Prusky is now offering an interpretation of the contract different from and contrary to the one that he presented at trial, he has waived the right to argue in favor of this confliction interpretation on appeal. We agree.

"Generally, 'absent compelling circumstances an appellate court will not consider issues that are raised for the first time on appeal.' " *Ross v. Hotel Employees and Restaurant Employees Intern. Union,* 266 F.3d 236, 242 (3d Cir.2001) (quoting *Patterson v. Cuyler,* 729 F.2d 925, 929 (3d Cir.1984), *overruled on other grounds recognized in Carter v. Rafferty*, 826 F.2d 1299 (3d Cir.1987)). "[A]rguments asserted for the first time on appeal are deemed to be waived ... absent exceptional cir-

44 Fed.Appx. 545, 2002 WL 1774064 (C.A.3 (Pa.))
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 44 Fed.Appx. 545, 2002 WL 1774064 (C.A.3 (Pa.)))**

cumstances (e.g., the public interest requires that the issues be heard or manifest injustice would result from the failure to consider such issues)." *Brown v. Philip Morris Inc.*, 250 F.3d 789, 799 (3d Cir.2001).

Prusky's position at trial was that the transfer cut-off time is 4:15 p.m. under the Contract. In his Complaint, he stated that, "[u]nder the Contract, transfers between and among sub-accounts become effective at the close of the then-current valuation period, which at the time Prudential sold the Contract, was 4:15 p.m." Ap. at 75a. In his closing argument at trial, Prusky's counsel remarked, "We know that the parties intended in 1997 that the transfer would take effect on the date that the transfer request is received at the home office, if it were received by 4:15 [p.m New York Time]." Ap. at 173a. Prusky maintains, however, that his current position on appeal (that there is no transfer cut-off time) is not inconsistent with his stance at trial because his position at trial relied upon his previous understanding that a separate prospectus constituted part of the Contract an understanding that, according to Prusky, was later rejected by the District Court. Thus, Prusky contends that, because his position at trial depended upon his belief that the prospectus was a part of the Contract, that position does not contradict his current position, which is based on a different understanding of what constitutes the Contract.

**\*\*3** Because we find that it is and always has been clear under the express language **\*548** of the Contract that the Contract consists of only the policy and any attached copy of an application, we cannot accept Prusky's argument. The Contract plainly states, "This policy and any attached copy of an application, including an application requesting a change, **form the entire contract**." Ap. at 189a (emphasis added). In describing the contract as "the policy and attached application," (Ap. at 13a.), the District Court simply recited the express language of the Contract. We find that it would be improper to consider the court's description of the

Contract as a critical finding with significant ramifications to the parties' understanding of the case. Because Prusky had ample opportunity prior to final judgment to present to the District Court the theory he now offers on appeal, and because we see no compelling circumstances justifying an exception to the general waiver rule, we conclude that Prusky has waived his right to introduce that theory here. FN1

FN1. While it is true that Prusky presented his current theory that no transfer cut-off time existed under the Contract in his motion for reconsideration, that fact does not affect our analysis here. "[T]he purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence." *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir.1985) (citing *Keene Corp. v. International Fidelity Insurance Co.*, 561 F.Supp 656, 665 (N.D.Ill.1983)). It is not to allow a party to "simply change[ ] theories and [try] again," thus giving them "a second bite at the apple." *Bhatnagar v. Surrendra Overseas Ltd.*, 52 F.3d 1220, 1231 (3d Cir.1995).

IV.

For the reasons stated above, we will affirm the Judgment of the District Court.

C.A.3 (Pa.),2002.
Prusky v. Prudential Ins. Co. of America
44 Fed.Appx. 545, 2002 WL 1774064 (C.A.3 (Pa.))

END OF DOCUMENT