UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

JOSEPH C. MCCORMICK
and MARY C. MCCORMICK
and on behalf of others similarly situated,

        Plaintiffs,                                      Case No. 12-C-763

      v.

INDEPENDENCE LIFE AND
ANNUITY COMPANY,

        Defendant.

**PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF
THEIR MOTION FOR RECONSIDERATION OF THE COURT'S
DECISION AND ORDER (DKT. #42)**

        In its opposition brief, Independence largely ignores one of the main aspects of Plaintiff's motion for reconsideration: the Policy does not allow Independence to annually take or transfer any amount from the cash value of Plaintiffs' Policy as collateral for the yearly 4.7% interest charged on the policy loan. The Policy only allows the transfer of assets equal to the amount of the "loan," at the time of the loan, from the Plaintiffs' cash value. There is no provision that allows later transfers to cover yearly interest charged on the loans or "indebtedness" (a defined term that is different from the "loan" amount). Accordingly, the Court's Decision and Order (Dkt. #42), which concluded that the Independence was authorized to transfer amounts each year as collateral for interest charged on a loan, is in error.

        Independence suggests that the Policy states that "yearly loan interest 'will be added to the principal of the loan' and that '[a]ssets equal to the amount of the loan ... will be transferred

to our [G]eneral [A]ccount[.]". (Dkt. #41 at 5-6). However, the suggestion is misleading and derives only from Independence's "cut and paste" of entirely different provisions of the Policy. The Policy says nothing about transferring amounts to cover yearly loan interest or indebtedness (as opposed to the initial loan amount). The Policy, to the contrary, clearly states that the "only security" for the Policy loan will be a single transfer at the time of the loan in an amount equal to the loan.

First, it is important to note that "Indebtedness" is a defined term to account for unpaid interest on loans and is different from the policy loan amount:

> "Indebtedness" used in this policy's provisions means the amount of all outstanding policy loans secured by this policy plus the accrued interest on such loans.

(Dkt. #37-1 at 9). Second, the "Policy Loans" provision provides that assets equal to the amount of the "loan" -- not the indebtedness -- will be transferred to the general account to secure the loan, which will be the only collateral for the loan, and that transferred amount will earn 4%:

> **Policy Loans**
>
> If this policy is in effect, you may borrow all or part of the Loan Value of the policy at any time by completing our policy loan form. This policy will be the only security required by us for the loan.
>
> Assets equal to the amount of the loan will be taken by proportion from the Sub-Accounts, unless you request otherwise. These assets will be transferred to our general account and will earn interest at the rate of 4%.

(Id.). Lastly, the "Interest on Loans" provision provides that any amount loaned by Independence will earn interest at the rate of 4.7% and be added to the principal of the "loan" if not paid, but makes no mention of any additional transfers or need for additional "security":

> **Interest on Loans**
>
> We will charge interest at the rate of 4.7% a year on all loans made under the Policy Loans provisions. Interest will accrue daily and is due at the end of the

policy year. If the interest is not paid by the end of the policy year, it will be
added to the principal of the loan and will bear interest.

(Id.). From the Policy Loan Provisions, it is clear that Independence may only transfer amounts equal to the initial loan value and that amount will be the "only security required" for the loan. The Policy provides no additional right to take any amounts from the Plaintiffs' sub-accounts as collateral for indebtedness or for any other purpose. Since the Policy does not allow Independence to transfer annual amounts from the cash value as additional collateral for interest charged on a loan, the Court's interpretation of the Policy and decision was in error.[1] At the very least, the lack of any provision supporting Independence's interpretation creates an ambiguity that must be resolved in Plaintiffs' favor. *Tamayo v. Blagojevich,* 526 F.3d 1074, 1081 (7th Cir. 2008); *Brown & LaCounte, L.L.P. v. Westport Ins. Corp.,* 307 F.3d 660, 662 (7th Cir. 2002).

Independence further distorts the record by suggesting in its response brief that Plaintiffs "for the first time argue that the prospectus was incorporated in the Policy". (Resp. Br. at 2). Plaintiffs did raise this issue in their response to Independence's motion to dismiss. (Dkt. #36 at 3, 11). In fact, in Independence's reply brief in support of its motion to dismiss, Independence expressly acknowledged Plaintiffs' argument, despite Independence's disagreement with the argument, that the prospectus is incorporated in the Policy:

> Plaintiffs' opposition briefly refers to the prospectus, and offers a misleading argument that it is part of the Policy. (Dkt. #36 at 11). However, this grossly mischaracterizes the Policy application by stating that it includes a representation

---

[1] This alone necessitates reconsideration. As discussed below, Independence also focuses on whether the prospectus is incorporated into the Policy or not in its response brief. (Dkt. #49). While Plaintiffs take the position that it is incorporated in the Policy, it is important to note that, regardless of the outcome of the issue on incorporation of the prospectus, the Policy still does not allow Independence to annually transfer amounts from the cash value as collateral for annual interest on loans. Accordingly, it was in error for the Court to interpret the Policy against Plaintiffs without any provision to support such an interpretation and, in particular, under a standard of review that requires that ambiguities be construed in favor of the plaintiff and the non-drafting party.

- 3 -
Case 1:12-cv-00763-WCG   Filed 05/14/14   Page 3 of 6   Document 51

that the policyholder read and understood the prospectus and that the statements in the application 'will form part of the policy.'

(Dkt. #41 at 8).

The Court correctly noted that the prospectus is contrary to Independence's interpretation of the Policy; however, the Court then concluded that the prospectus did not appear to be incorporated in the Policy and did not consider the prospectus in interpreting the Policy. (Dkt. #42 at 7, n. 2). First, the prospectus is incorporated by reference in the Policy:

- The Policy is defined as the Policy "with the attached application and papers". (Dkt. #37-1 at 5).

- The application asks for the specific prospectus received by Plaintiffs (of which Plaintiffs noted "11/7/86") and elicits answers to questions to ensure that the prospectus is understood. (Dkt. #37-1 at 19).

- The application expressly provides that the "statements and answers" in the application "will form part of the policy". (Dkt. #37-1 at 20).

- The Policy itself incorporates by reference the prospectus at numerous points: "The Account consists of Sub-Accounts which are identified in ... the current Prospectus you received"; "When a change is made, we will send to you ... a revised Prospectus for the Account"; Further explanation of the General Account is provided in the Prospectus". (Dkt. #37-1 at 6, 7, 16, and 17).

- The prospectus explains that it "describes ... the portion of the Policy invested in the Sub-Accounts" and that "no person is authorized to make any representation in connection with this offering [i.e., policy] other than those contained in this prospectus". (Dkt. #24-6 at 1, 4; *see also* Dkt. #37-2).

- Independence directs its policyholders to "consult your prospectus for the relationship between Cash Surrender Value and the Investment Base". (Dkt. #24-2 at 1).

- When asked in an interrogatory to explain how the cash value in the sub-accounts and the death benefit is calculated on Plaintiffs' Policy, Independence responded that "the method of calculation remained the same as described in the prospectus". (Dkt. 16-2 at 2).

Independence's reliance on *Rosenblum v. Travelbyus.com Ltd* is distinguishable to the express references of incorporation noted above. The Acquisition Agreement at issue in

*Rosenblum* merely noted the existence of a separate Employment Agreement, but gave no cross-reference or indication of intent to incorporate by reference. 299 F.3d 657, 664-66 (7th Cir. 2002). This is strikingly different to the clear references noted above indicating that the contract includes the "policy with the attached application and papers" and that references in the application concerning the prospectus "will form part of the policy" and that Independence is not authorized to make any representation concerning the Policy that is contrary to the prospectus and repeatedly directing policyholders to the prospectus for information. These types of references noted above are exactly the type that constitute incorporation by reference. *See Matthews v. Wis. Energy Corp. Inc.*, 534 F.3d 547, 554 (7th Cir. 2008)(a settlement agreement referencing an employee reference check policy incorporated that policy therein); *see also* 17A Am. Jur. 2d Contracts §391 ("Parties to a contract are bound by pertinent references therein to outside facts and documents.").

The incorporation of the prospectus in the application, which is incorporated into the definition of the Policy, the numerous references in the Policy to the prospectus, and Independence's documents directing policyholders to the prospectus are more than enough to establish incorporation by reference of the prospectus into the Policy. Moreover, given the fact that there is no provision in the Policy that supports Independence's interpretation, the very indication that the prospectus is incorporated in the Policy, at the very least, renders the Policy ambiguous and such ambiguity should be resolved in Plaintiffs' favor. *188 LLC v. Trinity Industries, Inc.*, 300 F.3d 730, 736 (7th Cir. 2002)(overturning District Court's grant of a Rule 12(b)(6) motion and decision when it wasn't clear as a matter of law whether document was incorporated into the contract). *Brown & LaCounte, L.L.P. v. Westport Ins. Corp.*, 307 F.3d 660, 662 (7th Cir. 2002) ("As with other contracts, if an insurance policy's terms are ambiguous, the

- 5 -
Case 1:12-cv-00763-WCG    Filed 05/14/14    Page 5 of 6    Document 51

ambiguity is resolved against the drafter."). As such, it was in error that the Court did not consider the prospectus as part of the Policy and in interpreting the Policy at issue in a manner contrary to the express language of the Policy and the prospectus.

## **CONCLUSION**

Plaintiffs reasonably request that the Court grant their motion for reconsideration since the Decision and Order (Dkt. #42) was in error in concluding that (1) the prospectus is not incorporated into the Policy; (2) the Policy allows Independence to annually transfer an amount equal to annual loan interest charged on a policy loan from the cash value of Plaintiffs' Policy as "collateral"; and also in (3) resolving ambiguities in favor of Independence, as opposed to Plaintiffs, at this preliminary pleadings stage.

Dated this 14th day of May, 2014.

LAW FIRM OF CONWAY, OLEJNICZAK & JERRY, S.C.
Co-Counsel for Individual Plaintiffs and members of the putative class

By: *s/George Burnett*
George Burnett, State Bar #1005964
Kurt A. Goehre, State Bar #1068003
P.O. Box 23200
Green Bay, WI 54305-3200
Ph: 920-437-0476
gb@lcojlaw.com
kag@lcojlaw.com

FOX & FOX, S.C.
Co-Counsel for Individual Plaintiffs and members of the putative class

Michael R. Fox, State Bar. #1015173
124 West Broadway
Monona, WI 53716
Ph: 608-258-9588
mfox@foxquick.com

*201221.018:#1803298*